## LIGHTHOUSE v. CHICAGO, M. & ST. P. RY. Co.

1. It is the right of the jury to determine the probative force of evidence, whether direct or circumstantial.

2. A positive statement of a witness may be discredited and rejected by the jury, if they believe other evidence in the case establishes the existence of circumstances inconsistent with, and which make improbable, such statements.

3. In an action for killing stock trespassing upon defendant's right of way the jury is not obliged to accept as conclusive the positive evidence of the engineer that, although he was looking forward along the track, he did not see such stock until within 25 or 30 feet of them, if they believe from other evidence that at the time of the accident it was so light as to render such statement improbable.

(Syllabus by the Court. Opinion filed Feb. 15, 1893.)

Appeal from circuit court, Brown county. Hon. A. W. CAMPBELL, Judge.

Action to recover damages for killing plaintiff's horses. Plaintiff had judgment. Defendant appeals. Affirmed.

The facts are stated in the opinion.

John H. Perry (H. H. Field and Burton Hanson of counsel), for appellant.

The defendant having rebutted the evidence of the plaintiff and shown that there was no negligence on the part of defendant, it was entitled to a verdict. Valkman v. Ry. Co., 5 Dak. 69; Gay v. Ry. Co., Id. 519; Pattee v. Ry. Co., Id. 267; Huber v. Ry. Co., 6 Dak. 392. The horses killed were trespassers on defendant's property and it was not defendant's duty to keep a lookout ahead for animals on the track. Palmer v. Ry. Co., 33 N. W. 707; Stacy v. Id. 43, N. W. 905; Locke v. Ry. Co., 15 Minn. 350; Railroad v. Kerr,

12 S. W. 329; Railroad v. Shaver, 14 S. W. 864; Pierce, Railroads, 401. The defendant would only be liable for gross negligence. Jones v. Ry. Co., 77 Wis. 585; Maynard v. Railroad, 115 Mass. 458; Howard v. Ry., 7 So. 216; Senate v. Ry. Co., 41 Mo. App. 295; Railroad v. Buck, 14 Brodw. 394; *Id.* v. Talbot, 78 Ken. 621; *Id.* v. Packwood, 7 Am. & Eng. R. R. Cases, 584; *Id.* v. Turner, 19 *Id.* 491; *Id.* v. Wall, 7 S. E. 639; *Id.* v. Harris, 9 S. E. 786; *Id.* v. Smith, 7 So. 212; Pennsylvania Co. v. Davis, 29 N. E. 425; Railroad v. Harris, 9 S. E. 786.

*George W. Jenkins* and *F. A. Luse*, for respondent.

At common law a railroad company was not liable for killing stock trespassing on its track except through gross negligence or willfulness. Williams v. Railroad, 5 Ind. 111; *Id.* v. *Id.*, 2 Mich. 259; Stuck v. Railroad, 9 Wis. 202; Galpin v. *Id.*, 19 Wis. 604; McDonnell v. *Id.*, 15 Mass. 564; Towanarda v. Munger, 5 Denio, 255. Our statute makes railroads liable for negligently or carelessly killing stock. Section 5500, Comp. Laws. It is negligence if the animals are or could be seen a sufficient distance ahead to prevent injury. Mason v. Lestan, 30 Ga. 911; Railroad v. Tracy, 43 Ill. 77; *Id.* v. Baker, 47 Ill. 295; *Id.* v. Barrie, 55 Ill. 226; *Id.* v. Mullen, 66 Ill. 526; *Id.* v. Kalcot, 71 Ill. 346; *Id.* v. Irish, 72 Ill. 404; Lawson v. Railroad, 57 Iowa, 672; Railroad v. Lebus, 15 Bush. 518; Wallace v. Railroad, 74 Mo. 594; Kerchastler v. Railroad, 3 Ohio St. 172; Needham v. *Id.*, 37 Cal. 417; Pippin v. *Id.*, 75 N. C. 54; Bennis v. *Id.*, 42 Vt. 190; Stuck v. *Id.*, 6 Wis. 202; Prickett v. *Id.*, 7 Pac. 611.

KELLAM, J. This action was brought to recover damages for killing a number of horses belonging to plaintiff. The horses were killed near the east end of a pile bridge in defendant's roadbed by an extra engine running west. The accident occurred in the evening. The horses were running at large, and for some time before the accident the plaintiff and his son had been unsuccessfully trying to capture them. The evidence tends to show that they came upon the track about half a mile east of the place of the accident, and traveled along or upon the track towards the bridge where the accident occurred, and were together just at the east end of the bridge when they were struck. The plaintiff recovered judgment, and the defendant appealed to this court.

No exception was taken by either side to the charge of the court, and it must, for the purposes of this case, be taken as the law. The court charged that the horses were trespassers on defendant's right of way; that the defendant company had a right to presume that its own right of way would not be occupied by others having no rights there; and that under the circumstances of this action the employes of the defendant upon the engine were not bound to keep a lookout ahead for animals that might be upon the road, but that it was their duty, whenever any animals were discovered upon the track, to use all reasonable means to avoid the injury of such animals. The question of fact, then, for you to determine is, when did the engineer and the other persons having charge of this train first discover these animals upon the track? It is not a question of when he might have discovered them, but when did he in fact discover them, When he did discover them it was his duty to use all the means within his power as a skillful engineer to avoid the injury to those animals, and therefore you are to determine from all the evidence when he first discovered the animals, and then you are to determine from the evidence whether or not he used all the means in his power — all reasonable means — to avoid hitting them after they were discovered by him on the track. Thus the question of fact referred to the jury was very simple, and covered only the inquiry whether the horses were in fact discovered in time to prevent the accident, if the persons in charge of the engine had made proper and reasonable efforts so to do. The engineer testified that he did not discover the horses on the track until he was within 30 or 40 feet of them. The conductor says he first saw them about the same time as the engineer, and when they were 25 or 30 feet from the engine. The jury by their special verdict found that they were 10 rods from the engine when they were first discovered by those in charge of the engine, and that reasonable efforts were not made after such discovery to stop the train. The only direct testimony as to when the horses were first discovered was as above stated, and necessarily comes from those in charge of the engine. The jury found against such direct testimony, so that we must look to the indirect and circumstantial evidence for

support for the verdict, if it can be supported. The accident occurred in the evening, but the witnesses do not agree as to the condition of the night. Defendant's witnesses say it was very dark; the engineer testifying, "I don't know as I ever have seen it so dark." On the other hand, one of plaintiff's witnesses says that it was a bright night; that it was light enough so that he could and did distinctly see the horses at a distance of 120 rods. Another witness for plaintiff says he saw the horses, immediately before the accident, running on the track before the engine, from his house, which was 140 rods from the track. How light or how dark it was, was material in assisting the jury to determine when the horses were in fact first discovered by those on the engine. The engineer had testified that the headlight was in proper order and was burning, that his eyesight was good, and that at the time of, and immediately before, the accident he was looking forward out of the front window of his engine along the track. The conductor says that both he and the engineer were keeping a "sharp lookout," and each testifies that he did not discover the horses until within 30 or 40 feet of them. The jury might well regard these statements as conclusive under some circumstances, but not under others. They might accept it as a candid statement of the fact, if they believed from the evidence that it was a dark night, or they might decline to accept it if they found it was a bright, light night; for it is within the ready knowledge of every one that such a thing could hardly occur in the full light of midday, but might easily happen in the extreme darkness of a cloudy night. There was evidence from which the jury might have found that it was an extremely dark night or that it was a very light night. Accepting the statement of plaintiff's witnesses that it was a bright night, that it was light enough so that they could and did see these horses at a distance of 120 or 140 rods, and the testimony of defendant's witnesses that they were at the time keeping a sharp lookout ahead, we think the jury might, without going outside the latitude of judgment and inference which a jury is entitled to exercise, regard the statements of defendant's witnesses as improbable in fact, and that they would be at liberty upon such evidence to find that these horses were discovered by those upon the engine sooner

than as indicated by their testimony, unless they believed from the testimony of the engineer and other experts that the oscillating, vibratory motion of the engine, under the conditions of the track, filled in with cinders, the rate of speed, the dark color of the horses, and the fact that they were standing still in a bunch at the end of the bridge when they were struck, as testified to, would or did prevent such discovery. There was some evidence from experts tending to prove the difficulty of discerning, through partial darkness, objects standing still upon the track, from a moving engine, and as to the effect of atmospheric conditions upon the penetrating power of the rays from the headlight. While in our opinion this evidence was candid and intelligent, it was still for the jury to say how much such conditions interfered with the vision of those in charge of the engine, and to find whether, under all the circumstances and conditions, the horses were in fact discovered in time to have prevented the accident. They found they were,—that they were seen soon enough so that the engineer might by reasonable efforts have avoided the collision. It is true the engineer and others upon the engine testified positively that they did not discover the horses until within 30 or 40 feet of them; but we are unwilling to say that even this unqualified statement might not be discredited by the jury, if they believed from the evidence that surrounding circumstances and conditions made its truthfulness improbable. If it was very light, very bright, when this accident occurred, so that others could and did see these horses in motion at a distance of 140 rods, and if the engineer was looking directly towards them, both of which facts there was evidence tending to prove, the jury might be justified in doubting the ingenuousness of that part of defendant's testimony. We think, too, that the jury would not be precluded from finding that the other unfavorable conditions, such as the condition of the track, the motion of the engine, and the difficulty of perceiving from it objects standing still, were not sufficient to explain the nondiscovery of these horses sooner than as testified to, accepting the statements of defendant's witnesses that they were keeping a sharp lookout ahead. The trial court, with superior advantages for judging of the candor and fairness and intelligence of all these witnesses, and with the im-

pressions which the evidence made upon him still fresh in his mind, refused to disturb the verdict for any of the reasons now urged before us; and, while there may be doubt as to the correctness of the verdict, we think we should not be warranted in vacating it. The judgment is affirmed. All the judges concur.