HARRISON v. CHICAGO, M. & ST. P. RY. CO.

1. In this state a railroad company is not required to be on the lookout for trespassing animals on its track, other than at public crossings; but it is required as soon as an animal is discovered on the track, to use reasonable care to prevent injury to the same.

2.  Negligence is the gist of an action to recover damages for animals killed by a railway company; and when the presumption of negligence arising from the killing is overcome by the evidence of the company, the plaintiff, to entitle him to recover, must prove facts tending to show that the killing was caused by the negligence of the company sufficient to warrant a jury in finding such negligence on the part of the company.

3.  Such evidence need not be direct and positive, but it must be such as to justify reasonable men in finding that the killing was the result of the company's negligence or that of its servants or employes.

4.  There must be something more established by such evidence than a mere probability, not the direct result of the facts proven, that the killing was caused by the negligence of the company. Facts and circumstances must be shown sufficient to bring conviction to fair-minded men, without resorting to mere conjecture or uncertain and inconclusive inferences.

5.  This court, in the determination of questions before it, looks only to the abstract of appellant, and the further or additional abstract of the respondent (in case one has been filed,) unless there is a conflict between the abstract and the further or additional abstract which requires an examination of the records on file in the clerk's office, to settle. A respondent who claims that there is evidence or other matters in the record or in the bill of exceptions sustaining the verdict, findings, or other decisions of the court, not contained in appellant's abstract, should bring such evidence or other matter before this court by a further or additional abstract.

(Syllabus by the Court.   Opinion filed Oct. 17, 1894.)

Appeal from circuit court, Yankton county.   Hon. E. G. SMITH, Judge.

Action to recover damages for an animal killed by defendant's engine.   From a judgment for plaintiff, defendant appeals.   Reversed.

The facts are fully stated in the opinion.

*R. B. Tripp* (*H. H. Field,* of counsel), for appellant.

It is not the engineer's duty to keep a look-out for trespassing animals.   Lighthouse v. Railroad, 3 S. D. 518; 54 N. W. 321.   The presumption arising from the killing of a trespassing animal on the track is one of law.   Kansas v. Deaton, 9 S. E. 828; Railroad v. Wall, 7 Id. 639; Flatters v. Chicago, 35 Ia. 191; Railroad v. McAlpene, 75 Ala. 113; Havannah v.

Jarvis, 10 So. 323. There is no liability for such killing of trespassing animals unless there was gross negligence, or wilful misconduct. Williams v. Railroad, 2 Dak. 174; Valkman v. Railroad, 5 Dak. 75; Rorer Railroads 1392; .Munger v. Tonawanda, 4 N. Y. 349; Maynard v. Boston, 115 Mass. 458; North v. Rehman, 49 Pa. St. 101; Railroad v. Hoster, 38 Ind. 558; L. & N. W. Railroad v. Ballard, 2 Metc. 177; Price v. Railroad, 32 N. J. L. 19; Atchinson v. Beets, 15 Pac. 821.

A party is answerable for the consequences of his negligence. Hart v. Allen, 2 Watts 115; Horlon v. St. Louis, 65 Mo. 25.

When the evidence or findings do not show that the damage was the result of the omission of a duty, the verdict is set aside. Holman v. Railroad, 62 Mo. 562; Stoneman v. Railroad, 58 Id. 503; Illinois Central v. Phelps, 29 Ill. 447; Quincy Railroad v. Wallhorner, 72 Id. 60; Jackson v. Railroad, 36 Ia. 453; Railroad v. Hursh, 25 Ill. App. 181. Whatever is not found is not supposed to exist. Pittsburg v. Evans, 53. Pa. St. 253.

*V. V. Barnes*, for respondent.

If the evidence be conflicting or if there be any evidence that tends to prove that the act complained of was the result of negligence on the part of the defendant, the question is for the jury. Haber v. Railroad, 6 Dak. 395.

CORSON, P. J. On the trial the plaintiff and respondent introduced evidence tending to prove the killing of respondent's cow by appellant's engine, and the value of the animal. The respondent also testified as follows: "* * * About four or five rods from where the cow lay towards the river, there were cow tracks in the middle of the railroad track, and the tracks looked as if the animal had been running. It was a moonlight night. * * * It was not a straight track where the animal was killed, but it is all open. The curve is to the south. It is not a very big one. There was no wagon-road crossing

where the animal was killed. Van Epps has a crossing to the two parts of his farm, three or four rods from there. It wasn't a crossing really. He used it for that, however. It was not a public crossing." Mr. Van Epps, on behalf of the plaintiff, also testified as follows: "* * * I noticed cow tracks on the grade. They extended four to six rods, though I did not take any particular notice of them. The place was about an eighth of a mile from the bridge. There is nothing to obstruct the view there each way until you get to the three-quarters, and there you strike some brush. There is a curve in the track there. It is not a big curve. I should not think it would interfere with the view of the track. You can see about a half a mile along the track from the Jim river bridge." The appellant then called as a witness Mr. Myers, the engineer in charge of the engine, who testified as follows: "I reside in Yankton. I was in the employment of the defendant August 29, 1892. My run was between Sioux City and Yankton. I have heard the testimony of plaintiff's witnesses with reference to the killing of the cow. I was the engineer in charge of the engine that did it. I came on there about on time. I generally shut the engine off crossing the Jim river bridge, and as I came out this end of the bridge I gave her steam again. I was running about 20 miles an hour, and about 100 feet ahead of me I saw the cow as I came around the curve, but too close to stop. When I first saw her she was standing across the track, perfectly still, I think. It was the regular evening express train,—two coaches and a baggage car. The train was on time. It was after dark. It would have been impossible for me to have stopped the train, after seeing the animal, so as to have saved her. Q. Did you make any attempt to stop? A. I did not. Q. Why not? A. Because it was done so quickly I had no time for anything. Q. Did you give any danger or stock signals? A. No, sir; I did not. Q. Why? A. I had no time for it. I just saw the animal, and we were right on her; I might have seen her further ahead if we had

not been on a left-hand curve. Of a dark night we can see three or four hundred feet straight ahead. With that train and track there at that time it would have taken from three to six hundred feet within which to have stopped the train. A train is not so easily stopped at night, because the dew makes the track slippery. I have been a locomotive engineer for twenty years. I previously served as a fireman four years. I have worked for this company since 1880. I have been on this run for thirteen years. The train, the evening of the accident, was supplied with air brakes, and all the modern improvements for stopping, and they were in first-class condition. I had a large Queen engine, and it was in good condition. The headlight was lighted. With a headlight you cannot see so far ahead on a moonlight night as on a dark night. The light of the moon kills the light of the headlight, the same as the light of the sun will hurt the light of a lamp; the darker the night, the further you can see with a headlight. * * * The track was in good condition there that night. We were not running quite as fast as ordinarily at that point that evening. In ordinary service, there were two men on the engine, the engineer and the fireman. There was a firman with me. He is now in Brooklyn, N. Y. * * * At that time the fireman was generaly putting in his last fire. I know that I saw the cow first. * * * I saw the cow about 100 feet before I struck her. The curve on the track prevented me from seeing her earlier. I could not see from the Jim river bridge down to the point of the accident. I might, in the daytime, if I got down from my seat and looked out from the opposite side across the curve. It is a 45-degree curve. On that curve the front part of the engine obstructed the view from my side; the cow was at the west end of the curve. She could only be seen about 100 feet ahead on my side. The curve starts right after you leave the bridge. You can't look out over the boiler in case of a left-hand curve, because of obstruction on the engine. A right-hand curve does not bother. The shortest possible

distance in which I could have stopped that train was 400 feet. I could have drawn it down to 10 miles an hour in a 150 or 200 feet but I cannot tell exactly. I could not get down to 10 miles in 100 feet. The cow stood across the track when I first saw her. If an animal is moving, whistling will generally make it go faster, but it will not, as a rule, when they are standing still. It tends to frighten and hold them where they are. When I first saw her, she was standing perfectly still. The reason I did not see the cow further ahead, as I have before stated, was because of the curve. If I see an animal, and can save it, I do so; but do not slow down, of course, when I come onto it, and strike it almost the instant I see it. I had no object in killing this cow. In a distance of 200 feet you would not have time to handle machinery so as to slow up or give alarms at the rate of speed we were going." Redirect: "The right hand side of the cab is the engineer's side; the left, the fireman's. His duties are to shovel coal, keep up steam, clean the engine, keep his oil cans filled, and look out when he has time. * * * The reason I gave no signal was because I was right upon the cow. After I saw her, I hadn't time to move before striking her. The accident was not at a crossing. Immediately before seeing her, I was giving my engine more steam. I was on the lookout at the time. The accident was about 8:20 p. m. The headlight, at the time of the accident, was in good condition, and it had a good light in it. It was dark. It was dark when we left Gayville." The conducter of the train testified to the competency and carefulness of the engineer, and corroborated him in his statement as to the good condition of the train and train service, as did also the baggage master.

In rebuttal the respondent recalled as a witness Mr. Van Epps, who testified as follows: "I occupy the premises from the Jim river bridge to the crossing spoken of, and have occupied them for about eight years. There are no obstructions to the view between the Jim river bridge and the place of the ac-

cident, no willows on either side of the track. That was the condition there the 29th day of August, 1892. From the bridge the road runs pretty near east and west till you get to the curve. You can see the track toward Yankton for over a half a mile from the bridge. That would be beyond the place of the accident. Q. State how far you can see round the curve from the bridge. A. Well, a man would have to look across the curve. He could not see around the curve very well. He could get the whole view of it. Q. Then the entire curve is within full view from the bridge? A. Yes, full view. I have noticed the engineers generally give signals or alarms to drive stock from the track down there." Cross-examination: "Q. Do you know of any custom with reference to giving signals there under such circumstances as are disclosed by the evidence in this case? A. According to the evidence in this case, they would not have any chance. I know I never knew of an engineer giving a signal or alarm to an animal there when he was right on to it. I never saw such an occurrence there as is detailed here." Redirect: "Q. What do you mean by that? A. I mean the occurrence was, they didn't see the creature until they was right on to it. Of course they had no chance to give any signal there, I don't think." The respondent also testified in his own behalf as follows: "I lived about a mile from the place of the accident, and have been acquainted with the premises there for nine years. Between the railroad bridge and the place where the cow was killed there are no obstructions. A man ought to see anything if it is not too dark. The biggest curve there was above where the cow was killed. You can look across the curve and see half way to Yankton. I could see anything on the track from the bridge, in the daytime. From the bridge to the place where the cow was killed it is a good piece, probably half a quarter of a mile." Cross-examined: "I never was there in the cab of an engine in the nighttime. I don't know anything about how far I could see from the bridge in a cab with the obstructions of the boiler, whistle, and other things of that character on the engine."

The foregoing is substantially all the evidence given upon the trial bearing upon the accident and its cause. At the close of all the evidence the counsel for the appellant moved the court to direct a verdict in its favor for the reason that under the evidence adduced there was no question for the determination of the jury. This motion was denied, and exception duly taken. The case was thereupon submitted to the jury, which found a general verdict for the plaintiff, and also the following special verdict: "(1) Was the plaintiff's cow killed through the negligence of the defendant? Answer. Yes. (2) If your answer to the last question be 'Yes,' in what did the negligence consist? Answer. In not making any attempt to frighten cow from the track. J. L. Boone, Foreman." The court gave to the jury two instructions, to which exceptions were duly taken Those instructions are as follows: "(1) If you believe from the evidence in this case plaintiff's cow in question was killed by a passenger train of cars on defendant's track, and that before the cow was killed it was seen and was in plain view of the engineer in time to have slackened the speed of the train and avoided the accident, and no efforts were made to do so, then the plaintiff would be entitled to a verdict at your hands. (2) If the cow was seen by the engineer, and the cow was then on the track, and if the engineer, without injury to the train or injury to the passengers, could, by the exercise of ordinary care, have stopped the train or frightened the cow away with the whistle or other reasonable means, so as to avoid the injury complained of, and he carelessly neglected to do either, and by reason of such negligence the accident occurred, then the defendant would be liable for the killing of the animal in question." A motion for a new trial was made and denied, and exception taken.

The following errors are assigned: "(1) The court erred in its refusal to direct a verdict in favor of the defendant. (2) The court erred in instructing the jury as stated in each of the specifications numbered 1 and 2. (3) The evidence is insuffi-

cient to show [that after the cow was seen upon the track] there was any omission of duty on the part of the defendant, its agents or servants in charge of the engine, that in any way contributed to the plaintiff's damage.    (4)  The evidence is insufficient to support the special findings, in that it does not appear that an attempt to frighten the cow from the track, if it could have been made, would have prevented the injury.  (5) The verdicts are against law, in that they are not within the issues raised by the pleadings.    (6)  The verdicts are against law in that it is shown that after the cow was seen by the servant of the defendant in charge of the engine that struck her it was impossible to have stopped in time to have avoided the accident.    (7)  The court erred in denying the defendant's motion for a new trial.    (8)  The court erred in awarding judgment to the plaintiff under the issues and evidence in this case."

The animal of the respondent was not killed at any railroad crossing, and hence the law did not require the engineer or fireman to be on the lookout for stock on the track.    Lighthouse v. Railroad Co. (S. D.), 54 N. W. 320.    It was the duty of the engineer, however, as soon as he discovered the animal on the track, to use reasonable care to prevent injury to it.    The law in this regard was correctly given to the jury by the court as follows:    "The defendant is not required to keep an outlook for trespassing animals upon its tracks at other places than public crossings.    The defendant is the owner of its track.    It is not bound to expect that stock may be upon its track.    It is simply bound, if it sees stock, to exercise care not to injure it."    The first question, then, to be considered is, should the appellant's motion that the court direct a verdict in its favor have been granted?    It will not be seriously questioned, we presume, that, if the evidence of the engineer was undisputed, the motion should have been granted.    If the engineer's statement was true, that the animal was within 100 feet when he first saw it upon the track, it would have been, as stated by him, physically impossible for him to have sounded the whistle or

stopped the train before striking the animal, assuming that the train was moving at the slowest rate of speed stated by the witness,—20 miles per hour.  He would have had less than five seconds in which to have taken any action.  Was there any evidence upon the part of the respondent that tended to raise any conflict with the evidence given upon the part of the appellant?  If there was, then the case was properly submitted to· the jury.  We have often stated the rule that seems to govern courts generally in determining whether or not a case should be submitted to a jury, as follows:  "If the evidence, when in, leaves the facts undisputed, and they are such that different conclusions or inferences could not reasonably be drawn therefrom, it becomes the duty of the court to declare their legal effect; but, if the facts are in dispute, or if, undisputed, they are such that different impartial minds might fairly draw different conclusions from them, they should be submitted to the jury."  Bates v. Railway Co. (S. D.), 57 N. W. 72.  The engineer, it will be noticed, says that when he first discovered the cow upon the track she was standing still.  It is claimed by respondent that he is contradicted in this statement by the respondent and Van Epps.  The respondent swears that he saw tracks between the rails, and "they looked as if the animal had been running" along the track, and Van Epps testified that he noticed cow tracks on the grade that extended four to six rods along the grade.  The only part of this testimony that seems to contradict the evidence of the engineer is the expression, the "tracks looked as if the animal had been running."  The fact that there were tracks there, as seen by Van Epps and the plaintiff, would not tend in the slightest to show that the ani· mal was not standing still when the engineer saw her, and we are inclined to think that the further fact testified to by plaintiff as to the appearance of the tracks does not tend to contradict the statement of the engineer, as the cow may have been running before he saw her, and yet standing still when the train came near to her.  Attracted by the headlight and noise

of the train as it came around the curve, she might very naturally have stopped to see what caused the unusual appeareance. In our opinion, there was no such material conflict in the evidence as required the submission of the case to the jury upon that point.

Again, respondent contends that the evidence on the part of the respondent that one could see across the curve in the track, from the Jim river bridge, to a point beyond where the cow was killed, was in conflict with the engineer's evidence. But we do not so view it. The engineer did not pretend to say. that one could not, from the bridge, or from the cab of the engine, see across the curve from the bridge to the point where the cow was killed, if one took pains to look from the left hand side of the cab in the daytime; and he admitted that, looking from the bridge on the left-hand side of the cab, one could so see. He states, however, that the engineer's place in the cab was on the right-hand side, near his machinery, and there is no evidence of any kind that even in the daytime one could see further where the road curved than he stated, when on that side of the cab; and the respondent's evidence had no tendency to prove anything as to how far one could see from that side of the cab in the evening, by moonlight and headlight.

It is contended by the respondent that there were some other facts proven on the part of the respondent, in the bill of exceptions, that tended to contradict the evidence on the part of the appellant, but this court will only look to the evidence contained in the abstract. If there was other evidence favorable to the respondent in the bill of exceptions, he should have served an additional abstract embodying such evidence. This court looks entirely to the abstract and the amended or additional abstract, unless there is some question raised by the abstract and additional abstract that requires this court to settle by reference to the records in the case on file in the clerk's office. The other evidence referred to by respondent's counsel must therefore be disregarded. The presumption of

negligence arising from the proof of the killing was clearly overcome by the evidence of the appellant, and the burden was upon the respondent to give evidence tending to prove negligence on the part of the appellant resulting in the killing. The gist of the action in this class of cases is negligence, and, when the presumption of negligence arising from the act of killing is overcome, the burden then shifts to the plaintiff to establish the negligence by the evidence of facts from which a jury may legitimately infer that the negligence of the defendant caused the death of the animal. The evidence need not be direct and positive, but it must be such as to justify reasonable men in finding that the killing of the animal resulted from defendant's negligence or that of its servants or employes. There must be something more than a mere probability, not the direct result of facts proven, that the killing was caused by defendant's negligence; that is, facts and circumstances must be shown sufficient to bring conviction to fair-minded men, without resorting to a mere conjecture, or uncertain and inconlusive inferences. It is true, the jury in this case has said by its special finding that the plaintiff's cow was killed through the negligence of the defendant in not making an attempt to frighten her from the track; but from what evidence in the record could the jury have legitimately found the facts stated? The jury must have found that the engineer saw the cow at a greater distance than 100 feet ahead of the train. But where is the evidence in the record that tends to prove that such was the fact, or that the engineer could have seen the animal, in the nighttime, on the curved track, further than stated by him, when on the right-hand side of the cab, where it was usual for him to be? We have been unable to discover any. Such a finding must therefore have been based entirely upon conjecture, which, as we have seen, is not permissible. It is true that in the case of Lighthouse v. Railroad Co. (S. D.), 54 N. W. 320, this court affirmed the judgment of the court below, although the engineer and conductor both stated that the

horses killed were not discovered until the engine was within 30 or 40 feet of them.    But in that case the road at that point was straight, and a witness testified that the night was so clear that he, when 140 rods away, saw the horses upon the track, running ahead of the engine for a time immediately before they were killed; and another witness testified that the night was so light that he saw the horses just before they were killed, though he was 120 rods distant.    The engineer and conductor testified that the night was very dark, and that they were keeping a close lookout along the track.    The evidence of the two witnesses contradicted those of the engineer and conductor in these and other important particulars, and justified the jury in finding that the engineer and conductor saw the horses much sooner than stated by them.    This case comes more nearly within the case of Hebron v. Railway Co. (S. D.), 57 N. W. 494, and we think should be ruled by the decision in that case. It follows that the court should have granted appellant's motion, and that the evidence was insufficient to justify the verdict of the jury or the special findings of the jury.    The instructions excepted to, while stating the law correctly, were not applicable to the facts proven in the case as shown by the record before us.    The judgment of the lower court is reversed, and a new trial granted.