## LEWIS v. FREMONT, E. & M. V. R. Co.

1. The exercise of reasonable care to prevent injury to trespassing animals discovered upon a railway track relieves the company from liability in case such animals are struck by a passing train.

2. A motion for the direction of a verdict in favor of the defendant at the close of all the testimony should be sustained, although the killing is admitted, when the statutory presumption of negligence arising there-from has been clearly overcome by the undisputed evidence.

(Syllabus by the Court.    Opinion filed June 15, 1895.)

Appeal from circuit court, Pennington County. Hon. WILLIAM GARDNER, Judge.

Action to recover damages for killing a horse. Plaintiff had judgment, and defendant appeals. Reversed.

The facts are stated in the opinion.

*James W. Fowler*, for appellant.

Where a railway is shown to have fully complied with the statute as to the running of its train, the burden of proof is upon the plaintiff to show by a preponderance of evidence that the damage was done by the gross negligence of the railway or its employes. Volkmann v. Railroad, 5 Dak. 69; Gay v. Railroad, 5. Id. 514; Wainscott v. Railroad, 3 Bush. 149; Packwood v. Railroad, 7 A. & E. Ry. Cas. 584; Talbott v. Kentucky, 78 Ken. 621; 7 Am. & Eng. Ry. Cas. 585; Huber v. Railroad, 6 Dak. 392; Hodgins v. Railroad, 56 N. W. 139; Hebron v. Railroad, 4 S. D. 538. An owner of stock in permitting them to trespass upon the railroad's right of way takes upon himself the responsibility for any loss occasioned thereby. Williams v. Railroad, 3 Dak. 168; Maynard v. Railroad, 115 Mass. 460; Darling v. Railroad, 121 Id. 121; Lock v. Railroad, 15 Minn. 362. Where a verdict is not supported by the evidence it should be set aside on appeal. Abbott v. Railroad, 16 N. W. 266; Rogslad v. Railroad, 17 Id. 287; Darey v. London, 14 A. & E. Ry. Cas. 650; Mantel v. Railroad, 19 Id. 362; Cadwaller v. Railroad, 27 N. E. 161; Kansas City v. Cautrell, 10 So. 580.

*Prima facie* evidence in the absence of all controlling evidence becomes exclusive and should operate in the minds of the jury as decisive to find their verdict as to fact. Crane v. Morris, 6 Pet. 398; Kelley v. Jackson, 6 Id. 622; U. S. v. Wiggins, 14 Id. 334.

·   *C. J. Patton* and *A. E. Wallace,* for respondent.

Whether the facts be disputed or not, regarding the question of negligence, if different minds may honestly draw different conclusions from them the case should properly be left to the jury. Williams v. Railroad, 3 Dak. 176; Lincoln v. Gillman, 18 Neb. 114; Johnson v. Missouri, Id. 690; Hathaway v. East, 29 Fed. 489. Ohio v. Collass, 73 Ind. 261; 16 Am. & Eng. Ency. Law, 465; Patterson v. Wallace, 28 Eng. L. & Eq. 48; Mangam v. Brooklyn, 38 N. Y. 465; Detroit v. Van Steinberg, 17 Mich. 99. If the testimony of a witness as to negligence is contradicted by circumstances the question should go to the jury. Elwood v. Western Union, 45 N. Y. 549; Hackford v. Railroad, 53 Id. 654; Smith v. Coe, 55 Id. 678; Heyne v. Blair, 62 Id. 19; Morse v. Erie, 65 Barb. 491; Van Ostrand v. O'Brien, 1 Weekley Dig. 312; Vinton v. Schwrab, 32 Vt. 612; Lindsay v. Lindsay, 11 Vt. 621; Kane v. Learned, 117 Mass. 190; Lane v. Railroad, 14 Gray 143; Kansas v. Painter, 14 Kan. 37; Dolfinger v. Fishback, 12 Bush. 475; New Jersey v. Nichols, 5 Vroom. 166; Atchison v. Bailey, 11 Neb. 332. On an application to direct a verdict, the evidence of the opposite party must be assumed to be true and he is given the benefit of all legitimate inference in his favor. Parks v. Ross, 11 How. 373; Purcell v. English, 86 Ind. 34; Pratt v. Stone, 10 Ill. App. 633; Bishop v. McNary, 2 B. Mon. 132; Gallatin v. Bradford, 1 Bibb. 209; Stone v. Railraad, 47 Id. 82.

FULLER, J. Respondent brought this action and obtained a judgment for the value of a·horse killed upon appellant's railway track by a passing engine. There is no material conflict in the evidence, and it is contended that defendant's motion to direct a verdict at the close of the testimony should have been granted.

Plaintiff, who was in the employ of the defendant as a section la-
borer at the time the horse was killed, testified as follows: "I
didn't see the horse killed. I saw the horse Saturday night. It
was in a cut on the prairie. They come out of a field,—a small
field,—and go into this cut. Between the field and cut there is a
place where the cattle would cross the railroad. It was a regular
crossing. The embankment ran down nearly to the ties. The
embankment was five or six feet high." "A. I seen his tracks
where he came down the track, where he entered the cut. He
jumped right onto the track where the section men had been at
work. There were ties long the edge of the track. He could not
run on the side of the track. He started to run through the cut.
There was only one horse's tracks. The horse was going north.
* * * I didn't see this accident. I heard the train going up
about nine o'clock at night. After I found the horse, I supposed
it was the one that did it. T. Miles, the section man, was
with me when I made the examination of these tracks. The horse
ran along the track 250 feet. It was the length of eight rails. I
do not know where the engine was when the horse went onto
the track. The ties were along there—the old ties—for about
seven or eight hundred feet. The horse went onto the track at
the south end of the cut." Another witness sworn in plaintiff's
behalf testified that, in his opinion, the horse tracks upon the rail-
road extended only about 100 feet from where the animal appeared
to come into the cut to the place where he lay when found. It
appears that the engine that struck the horse was practically new,
in first-class condition, and equipped with all modern appliances
in general use; and, by the aid of another engine, likewise equip-
ped, was drawing at the rate of 15 miles an hour, a freight train
consisting of 19 loaded cars, each of which was provided with an
air brake properly connected and in good order. The operators of
the engines and the train were all experienced and competent rail-
road men. The accident occurred on a dark, rainy night, while
the train was passing through a long, narrow cut, five or six feet
deep. The engineer, after testifying that at the time the horse

was struck his fireman was busy putting in coal, and was unable
to keep a lookout, proceeded as follows: "I ride on the right-hand
side of the cab. I was keeping a lookout ahead. The way it
looked to me, the horse jumped onto the track ahead of it,—right
ahead in front of the pilot,—or just about four or five feet ahead
of it. The horse was not on the track ahead of the engine. Not
until he was struck, that I saw.. He jumped onto the track from
the fireman's side of the cab. I didn't have time to do any
thing only open the cylinder cocks. These cocks are on each side
of the cylinder, and permit the steam to escape. That makes a
hissing sound. I thought that would hurry the horse, or whatever
it was, and it would make a little more of a jump. It is natural
when seeing stock, to scare them off as quick as possible. I didn't
have time to do much. * * * I could not have stopped or
checked the speed of this train before this animal was struck, from
the time the animal was first discovered. I could not have got
the brakes to work before he was struck. We had a headlight on
the engine. It was a fair headlight. I was keeping a sharp look-
out ahead. * * *. When he struck the track, I struck the
horse. I could not see how far he was carried. I jumped over to
the other side of the engine. He seemed to be caught or turning.
I was over there in a second, and he was struck on the other side.
I am positive the horse was not running or jumping ahead of the
engine. He was simply trying to cross the track. I didn't have
time to whistle. My foot was close to the lever, and I threw it
over. And that didn't get the steam on till he was struck. That
was all that I did. That was all that I could do. I didn't know
that it was a horse until I came back on the return trip. It was
about nine o'clock in the evening. Was dark and rainy and driz-
zling. * * * I first saw this horse the instant before he was
struck. In the cut I could not see outside. of the right of way.
The top of the bank is not very easy to see from my side of the
cab. The bank is five feet high, and he could not have been seen
any distance from where I was." The evidence of the engineer was
corroborated in most particulars by the fireman, who further testi-

fied that the train could not have been stopped upon that grade, running at the rate of 15 miles per hour, within a shorter distance than 500 or 600 feet.    As the accident did not occur at a crossing it is clear that the animal was wrongfully upon defendant's right of way and railroad track; and if the evidence of plaintiff regarding the tracks found between the rails is sufficient to support an inference that the horse ran ahead of the engine from 100 to 250 feet from the point where it first came down from the embankment onto the track, that fact becomes unimportant when considered with the undisputed evidence that it would require the utmost effort of the operators and the application of the brakes to every wheel to stop the train within 500 or 600 feet.    In our opinion, the *prima facie* case, based upon the statute, arising from the killing of the horse, was fully overcome by the undisputed evidence, and a verdict for defendant should have been directed.· Hebron v. Railway Co. (S. D.) 57 N. W. 494; Harrison v. Railway Co. (S. D.) 60 N. W. 405.    The·evidence being insufficient to justify and sustain the verdict, the judgment based thereon is reversed, and a new trial is ordered.