PETERSON *et al.* v. CHICAGO, M. & ST. P. RY. Co.

1. Where weather conditions are exceptional, the impression of witnesses as to temperature may be given in general terms; but, unless it is shown that resort to thermometers is impracticable, testimony concerning temperature can be expressed only in thermometric degress as observed by the witness or recorded by signal service officers.

2. In an action against a railroad for injuries to stock in transit it will be

assumed, in the absence of evidence to the contrary, that the railroad's employes did their duty in watering the stock.

3. In an action against a railroad for injury, to hogs in transit, evidence held insufficient to show that defendant's employes negligently failed to "wet down" the hogs, or that ordinary care was not taken of them.

4. In an action against a railroad for injury to hogs in transit, evidence held insufficient to show that defendant's failure to "wet down" the hogs was the proximate cause of the injury.

5. In an action against a railroad for injury to stock in transit, the burden is on plaintiffs to establish that the negligence alleged was the proximate cause of the injury.

(Opinion filed February 21, 1905.)

Appeal from circuit court, Minnehaha county; Hon. JOSEPH W. JONES, Judge.

Action by G. R. Peterson and another, co-partners as Peterson Bros , against the Chicago, Milwaukee & St. Paul Railway Company. From a judgment for plaintiffs and from an order denying a new trial, defendant appeals. Reversed.

*Porter & King, (H. H. Field,* of counsel), for appellant.

*Winsor & McNaughton,* for respondents.

HANEY, J. On June 24, 1901, the plaintiffs delivered to the defendant a car load of live hogs for shipment from defendant's station at Renner, S. Dak., to its station at Sioux City, Iowa. The hogs were loaded at 8 o'clock in the evening. The car in which they were carried reached Sioux City at 6:30 the following morning, was turned over to the Union Terminal Company, which pulled it into the stock yards at 8:16, and when unloaded about 20 minutes later 19 of the hogs were dead. To recover compensation for the loss thus occasioned this action was instituted, its trial resulting in a verdict in favor of the plaintiffs. Judgment having been entered and a new trial refused, the defendant appealed.

It is alleged in the complaint "that the defendant was negligent in removing said hogs from Renner in not commencing the transportation of said hogs for several hours after the same had been loaded and delivered to said defendant at about 8 o'clock p. m., of said 24th day of June, 1901, and that defendant was further negligent in not watering down and cooling said hogs while transporting them, as before alleged, from said Renner to said Sioux City," and "that the 19 hogs which so died, as heretofore alleged, were of the value of $255.47 when delivered to defendant, and when delivered to plaintiffs' consignees at said Sioux City, as before alleged, they were only of the value of $32.47." These allegations are denied by the answer, wherein it is averred "that the said hogs were received for transportation and transported by the defendant and delivered under and by virtue of the terms of a certain written contract executed on or about the 24th day of June, 1901, by and between the said plaintiffs and defendant, and not otherwise; that among the agreements, stipulations, and conditions contained in said contract were the following, to-wit: First. That the company shall not be liable as an insurer of the live stock transported under this agreement. Second. That the company shall not be liable for the acts of the animals to themselves or to each other, such as biting, kicking, goring, or smothering, nor for loss or damage arising from the condition of the animals, nor from their jumping from the cars, nor from loading or unloading them. Third. That the company shall not be liable for injury or damage to said stock by or on account of the delay thereof during its transportation, and it does not agree to deliver said stock at destination at any specified time." The evidence disclosed no delay in transporting

the property, and the existence of a written contract containing the alleged stipulations; hence only two issues remained at the close of the trial, namely, whether defendant's failure to "wet down" the animals caused their death, and the amount of plaintiffs' recovery, if entitled to recover at all.

Under the charge of the learned circuit court the verdict can be sustained only on the theory that the plaintiffs proved by a fair preponderance of the evidence that defendant's failure to "wet down" the hogs while in transit on its own lines was the proximate cause of their loss. It is contended that the evidence is insufficient to support such conclusion. The distance between Renner and Sioux City is admitted to be about 95 miles. An employe of the plaintiffs testified that he loaded the hogs about 8 o'clock in the evening, that they were "wet down" before being put in the car, and that they were then in good condition. Defendant's conductor and brakeman testified that the animals were "wet down" at Sioux Falls about midnight, and at Hudson about 4 o'clock in the morning, and that the weather became cooler after leaving Hudson. Blookington, an employe of the consignee, testified, in substance, as follows: "I have been unloading hogs for twenty years. From my experince and observation I can tell from the appearance of a car when received at the stockyards whether the hogs have been 'wet down' within a few hours. I did not see these hogs until they got to the chute. That was 8:16. I examined the car when I unloaded it. It was very dry. Nineteen hogs were dead. Those not dead were very hot. The weather was warm, hot." Though claiming ability to determine from the appearance of a car whether or not the hogs had been "wet down within a few hours," Blookington was not asked to give

an opinion concerning the car in question. Had he been, his testimony could not have conflicted with that of defendant's employes, because they did not swear that the animals had been watered within four hours of their arrival at the stockyards. The conductor and brakeman were not impeached by cross examination or otherwise. Two witnesses swore the animals were watered at Sioux Falls and Hudson. One witness swore 19 of them were dead when the car reached the stockyards. The latter fact can be ignored as easily as the former. It is usually cooler at night than in the daytime. It does not appear that this night was exceptionally warm. Blookington says the following morning was "warm, hot." What one person considers hot may be regarded as cool and comfortable by another. Where weather conditions are exceptional, the impressions of witnesses may be given in general terms, but reliable testimony concerning temperature can be expressed only in degrees as observed by the witness or recorded by signal service officers. The best evidence should always be produced, or its absence accounted for. Where thermometers are so plentiful and signal stations so numerous as they are in this age and country, courts and juries should not be required to depend upon loose expressions of opinion, unless it appears that resort to more reliable sources of information is impracticable. No attempt was made to show how often the animals should have been watered while in transit. In the absence of evidence to the contrary, it should be assumed that defendant's employes did their duty—that they watered the hogs as often as the circumstances required. Negligence cannot be presumed. So we say there was no evidence which justified the conclusion that ordinary care was not taken of the stock while in transit on defendant's lines.

And there is another respect in which the evidence is insufficient. Excluding the testimony of defendant's employes, and giving full force and effect to plaintiffs' evidence, it is not shown that defendant's failure to water the stock while in transit was the proximate cause of the loss. The record discloses no effort to discover such cause by an examination of the animals or otherwise. Under the special contract defendant was not liable if death resulted from smothering, or arose from the condition of the stock. When unloaded the hogs were "hot," 19 of them were dead, and the car was dry. That is all we know, all the jury knew. What caused the hogs to die? Smothering, some latent disease, or failure to "wet them down"? There was not a scintilla of evidence from which any fair-minded person could determine to which of these causes the loss should be ascribed. The burden was upon the plaintiffs to establish facts from which the jury might legitimately infer that failure to water the stock was the proximate cause of death. The evidence did not need to be direct and positive, but it should have been such as to justify reasonable men in finding that death resulted from the alleged cause. Mere probability was not enough. Facts and circumstances should have been shown sufficient to convince fair-minded men without resort to conjecture or uncertain and inconclusive inference. Harrison v. Railway Co., 6 S. D. 100, 60 N. W. 405.

The judgment is reversed and a new trial ordered.