FRANK CARTER, (PLAINTIFF) APPELLANT, v. H. R. ZOLLINGER, (DEFENDANT) RESPONDENT.—85 S. W. (2d) 189.

St. Louis Court of Appeals. Opinion filed July 19, 1935.

*Otto F. Karbe* and *Albert E. Hausman* for appellant.

*Case, Voyles & Stemmler* for respondent (appellant), H. R. Zollinger.

McCULLEN, J.—This suit was begun before a justice of the peace in the City of St. Louis by Frank Carter, who will hereinafter be referred to as plaintiff, to recover from H. R. Zollinger, hereinafter called defendant, the sum of $305, balance due for installing a heating system in defendant's home under a contract. Defendant filed a counterclaim in which he alleged that the heating system would not heat the house in accordance with the warranty in the contract, and asked for $245 damages against plaintiff. On appeal to the Circuit Court of the City of St. Louis, a trial before the court and a jury resulted in a verdict and judgment in favor of defendant on plaintiff's cause of action, and in favor of defendant and against plaintiff in the sum of $1 on defendant's counterclaim. Plaintiff and defendant each filed a motion for a new trial. Both motions were overruled and each party has perfected his separate appeal to this court. On stipulation of the parties and by order of 'this court, the two appeals have been consolidated.

Plaintiff in his petition alleged that in August, 1924, he agreed to install a hot water heating apparatus in the premises of defendant, and that defendant agreed to pay $805 therefor; that plaintiff did install said hot water heating apparatus, and that defendant paid $500 on account thereof, leaving a balance due of $305, which defendant refused to pay although demand for payment was made.

Plaintiff prayed judgment against defendant for said balance of $305, with interest from November 1, 1924.

Defendant's counterclaim alleged that plaintiff breached the agreement, and that said apparatus was not installed in a good, neat, substantial and workmanlike manner and was not adequate for the purpose; that it did not work, and defendant was required to spend $195 to make it work in the manner guaranteed by said agreement. Defendant further alleged that by reason of the defective and improper working of the furnace, the wall paper and furnishings of his home were damaged in the sum of $50. Defendant prayed damages against plaintiff in the total sum of $245.

The evidence shows that plaintiff was engaged as a contractor in the business of steam and hot water heating. Defendant's house was a one story frame building on a concrete base, with seven rooms and a basement, located on the old Florissant Road in St. Louis County. Defendant, desiring to have a hot water heating system installed in his home, went to the American Radiator Company sometime in July or August, 1924, and that company recommended plaintiff to do the work. By appointment, plaintiff went to defendant's home where he made an inspection. He went all through the house and measured each and every room to compute the cubical content thereof, examined the basement and talked the whole matter over with defendant to learn what defendant desired in the way of a heating system. Plaintiff testified that he understood that defendant wanted a heating system that would keep his home in comfortable condition even in cold weather; that he told defendant he would furnish him with the equipment and an installation to accomplish that purpose. Plaintiff made such measurements throughout the house as he deemed necessary to be the basis for a proposal by him to do the work.

On August 5, 1924, following the inspection, plaintiff submitted to defendant a written proposal "for furnishing and erecting complete an entire Low Temperature Hot Water Heating Apparatus" in the residence of defendant. The written proposal contained the following provision:

"Requirements. The result obtained shall be to heat the various rooms where radiators are placed to a temperature 70 degrees Fahrenheit when the outside temperature is 10 below zero."

Another clause of the written proposal provided that defendant, as the owner, would "provide for the exclusive use of this apparatus a good and sufficient smoke flue extending from bottom of cellar to point sufficiently elevated above roof to be unaffected by adverse winds." The written proposal also provided that defendant should do "any work that shall be necessary to put doors, windows or other parts of the building in thorough repair so as to avoid undue waste of heat." The last paragraph of the written proposal provided:

"Finally. The entire apparatus will be put up by expert mechanics, in a good, neat, substantial and workmanlike manner, first class, in every respect, and in the best, most approved form known to the trade, and when finished will be put in operation, thoroughly tested and left ready for use, and is hereby fully guaranteed of ample capacity to warm each room in which radiator is located to 70 degrees when outside temperature is 10 degrees below zero, for the sum of Eight Hundred and Five Dollars ($805.00)."

The evidence further shows that after receiving plaintiff's written proposal, defendant verbally ordered plaintiff to go ahead with the work; that the heating system was installed by plaintiff and at the completion thereof defendant sent plaintiff a check for $500, but later refused to pay the balance because, as he claimed, the system did not adequately heat the house.

Plaintiff testified that when he got through installing the system "it worked fairly well. We didn't stay there any length of time, may be three or four hours, until we painted it and tested it out. It worked as well as any other system would. It worked all right. On the day we finished the job it worked all right." Plaintiff further testified that he had made approximately two thousand installations such as he made in defendant's home and that they were made exactly the same.

The deposition of D. M. Forgan of Rye, N. Y., Vice-President of the American Radiator Company, who was manager of the St. Louis branch of that company in 1924, was read in evidence on behalf of plaintiff. His testimony was to the effect that defendant told the witness that the flue of his house was insufficient and that he intended to try to get plaintiff to pay a part of the expense of building a new one; that defendant said the heating system job was satisfactory except for the draft conditions.

Defendant testified that he is engaged in the furniture repair business; that when the heating system was put in operation, the first fire was made by Mr. Rohlfingmeyer, who worked for defendant at defendant's home, and "it smoked so badly we could hardly stand it." He said that thereafter he continued to have fire in the furnace from time to time, and that the smoke continued and plaintiff did not do anything to relieve the condition. Defendant further testified that he then had the chimney rebuilt with a double flue in January, 1925, at a cost of $150. During defendant's testimony, the following occurred:

"Q. Now, then, did you do anything else in respect to getting the place in shape to be properly heated? A. Had it weather-stripped.

"Q. Who did the weather-stripping? A. Monarch.

"Q. Well, that was the Kuhlman Weather Stripping Company, is that right? A. Yes, sir.

"Q. Do you know what that cost?"

At this point counsel for plaintiff objected on the ground that plaintiff's written proposal required the owner to do any and all work that should be necessary to put doors, windows and other parts of the building in thorough repair so as to avoid undue waste of heat, saying:

"Your Honor, please, weather stripping, as your Honor knows, is a customary thing done to prevent undue waste of heat. If it was required, he should have done it under this contract."

The court overruled plaintiff's objection, and he saved his exception.

Defendant then testified, over the objection and exception of plaintiff, that he paid the Kuhlmann Metal Weather Strip Company for weather stripping his home the sum of $128.50. Further on, defendant testified as follows:

"Tell the court and jury what, if anything, in addition to that you did in order to get the premises in such shape that you could get adequate heat. A. I had the entire outside of the building covered with Johns Manville asbestos shingles."

Counsel for plaintiff objected to the foregoing testimony on the ground that it was not material or relevant to the controversy and on the further ground that there was no duty on plaintiff to do anything of that sort, and that if it were necessary to prevent an undue loss of heat, it would be defendant's duty to do so under the contract, and objected to any statement or testimony as to defendant covering his building with asbestos shingles. The court overruled plaintiff's objection. The record shows, however, that plaintiff did not ask that the testimony concerning asbestos shingles be stricken out. Following the above testimony defendant was asked: "Q. How much did that cost you; do you know?", whereupon plaintiff's counsel objected on the ground that such an item was not covered by defendant's counterclaim. The court sustained the objection.

Plaintiff contends that the court erred in permitting defendant to introduce the testimony with respect to the weather stripping of his house, and the testimony showing that he covered his house with asbestos shingles.

As to the testimony concerning the asbestos shingles, the record shows that plaintiff's objections thereto came after the testimony had been admitted and was, therefore, too late to be the basis for complaint in this court in view of the fact that after the court had overruled his objection, plaintiff made no motion to strike out the testimony objected to. [Rockenstein v. Rogers, 326 Mo. Sup. 468, 31 S. W. (2d) 792; Boulicault v. Glass Co., 283 Mo. Sup. 237, 223 S. W. 423.]

We are of the opinion, however, that the testimony showing the amount paid by defendant for weather-stripping his house constituted prejudicial error. It was clearly competent for defendant to show that he had complied with the terms of the contract, which required him to do any work necessary "to put doors, windows or other parts of the building in thorough repair so as to avoid undue waste of heat," and that notwithstanding the fact that he had done so by having the doors and windows weather-stripped, the heating system was still inadequate to furnish the required heat. Thus far, such evidence was admissible as a defense to plaintiff's case, but the court fell into error in permitting defendant to show the cost of the weather stripping, since the cost of the weather stripping was not alleged in defendant's counterclaim as an element of damge, and was not competent or relevant as a defense to plaintiff's cause of action. The admission of such evidence could, therefore, only have had the effect of confusing the jury to the prejudice of plaintiff. The fact, if it be a fact, that the heating system installed by plaintiff was inadequate to produce the results required by plaintiff's proposal, cannot be held to justify the admission of testimony showing expenditures by defendant which were not applied to any part of the heating system complained of but were applied to an entirely different matter, namely, weather stripping of defendant's house. The only expenditures of money by defendant alleged in his counterclaim were "One hundred ninety-five dollars *to make said furnace work in the manner contemplated in and guaranteed by said agreement,*" and $50 damage to the wall paper and furnishings of defendant's home. It was, therefore, reversible error for the court to permit testimony concerning the cost of the weather stripping to be admitted.

Plaintiff further contends that the court also committed error in permitting Mrs. Zollinger, defendant's wife, and Mr. and Mrs. Rohlfingmeyer, who worked for defendant at defendant's home, to give testimony, over the objection and exception of plaintiff, that they could "never get the house warm;" that they "could not keep it warm;" that "the only way we could get any comfort" was to have the kitchen stove and the fire place going; that at certain degrees of temperature outside "the house was not comfortably warm." Plaintiff repeatedly objected to such testimony as well as to the questions which called it forth, on the ground that such expressions by the witnesses were mere opinions and conclusions of the witnesses and were not within the issues as to the specific temperatures provided for in the written proposal agreed to by the parties. In some instances plaintiff also moved that such testimony be stricken out but to no avail. He also saved his exceptions to the rulings of the court. The contract in this case specifically provides that the

rooms where radiators are placed shall be heated to "a temperature 70 degrees Fahrenheit when the outside temperature is 10 degrees below Zero."

Defendant's counsel cite a number of cases to show that the opinions of lay witnesses are admissible in evidence on a wide variety of matters, but they frankly concede that they are not able to cite to the court any Missouri decisions where the opinion or estimate was on the matter of temperature. We may add that counsel do not cite, nor have we been able to find, any case wherein opinion or estimate of temperature was admitted in evidence for the purpose of showing failure to comply with the terms of a contract requiring a specific temperature on the inside of a building or home when there was a specific temperature outside. As a matter of fact, the testimony introduced by defendant which is complained of by plaintiff here was not even an opinion or estimate as to any specific temperature, but was merely that "the house was not comfortably warm"—that "we could not keep it warm," and the like. There is no doubt that the old strict rule against the admission of the opinions of lay witnesses has been greatly liberalized in recent years, and that such opinions have become admissible as evidence where formerly they were held to be inadmissible. In the case at bar, however, there is nothing to show that it was impossible or impracticable for defendant to produce evidence with respect to the specific temperature in his house at a time when there was a specific temperature outside. On the contrary, in the testimony of Mrs. Zollinger it appears that there was a thermometer in the bathroom of the home and one on the sun porch thereof. The phrases "We could not keep it warm," "We could not keep it comfortably warm," and the like, are susceptible of such varying meanings to different persons as in our opinion to be incompetent to prove or disprove that the temperature at any given time was any specific figure. It is a matter of common knowledge that individuals vary to a considerable degree in their estimates of what is "comfortably warm" and in their estimate of what is "warm." There is nothing in the record to show what any of the witnesses, who gave such testimony, meant by such expressions as related to a temperature of 70 degrees Fahrenheit, which was specifically provided for in the written proposal.

The Supreme Court of South Dakota has given expression to principles which we think should be applied to this point in the case at bar. In a case involving the death of hogs in transit, alleged to have been due to the negligent failure of the railroad to "water down" and "cool" the hogs, a witness had testified that the weather at the time in question was "warm—hot." The court said:

"What one person considers hot may be regarded as cool and com-

fortable by another. Where weather conditions are exceptional, the impressions of witnesses may be given in general terms, but reliable testimony concerning temperature can be expressed only in degrees as observed by the witness or recorded by signal service officers. The best evidence should always be produced, or its absence accounted for. Where thermometers are so plentiful and signal stations so numerous as they are in this age and country, courts and juries should not be required to depend upon loose expressions of opinion, unless it appears that resort to more reliable sources of information is impracticable." [Peterson v. Chicago, M. & St. P. Ry. Co., 19 S. D. 122, 126, 102 N. W. 595, 597.]

We hold that the court erred in the case at bar when it admitted the testimony complained of.

If this cause should perchance be tried again after these many years of litigation between the parties, the evidence as to the temperature of the house should have some relation to the temperature specified in the contract over which the controversy has been waged. [Southern Iron Equipment Co. v. Smith, 257 Mo. 226, 165 S. W. 804; Peterson v. C. M. & St. P. R. R. Co., 19 S. D. 122, 102 N. W. 595.]

Plaintiff contends that the court erred in admitting testimony of an expert witness showing that nine years after the installation of the heating system the witness found no relief valve on the system. We rule this point against plaintiff. The objection of plaintiff came after the witness had testified that he had found no relief valve on the system and that the relief valve was a safety device for the purpose of allowing the pressure in the boiler to be released. Plaintiff made no motion to strike out such testimony after it was given, and hence cannot be heard to complain in this court about it. [Rockenstein v. Rogers, supra; Boulicault v. Glass Co., supra.]

A careful reading of the record discloses that defendant did not produce any evidence to support the charge in his counterclaim as to expenditures made by him "to make said furnace work in the manner contemplated in and guaranteed by said agreement." It is true defendant showed an expenditure of $150 for rebuilding the smoke flue, but the contract specifically called for defendant to provide "for the exclusive use of this apparatus a good and sufficient smoke flue extending from bottom of cellar to point sufficiently elevated above roof to be unaffected by adverse winds." Furthermore, the money expended by defendant for that purpose was not alleged as an element of damage in the counterclaim. As to the allegation in the counterclaim that the wall paper and furnishings of defendant's home were damaged, no evidence whatsoever was introduced by defendant. The record, therefore, fails to show any expenditure by defendant on the heating system itself which would

justify any verdict in his favor at all on his counterclaim. Defendant introduced a lot of evidence concerning a number of other things that he did, as we have shown, but none of it can be said to have been applied to the heating system itself to make that system work. Furthermore, the judgment of $1 in defendant's favor on his counterclaim has no relation to the evidence whatsoever, and should not be permitted to stand.

For the reasons given, the judgment in favor of defendant and against plaintiff on plaintiff's cause of action, as well as the judgment in favor of defendant against plaintiff on defendant's counterclaim are both reversed and the cause remanded. *Hostetter, P. J.,* and *Becker, J.,* concur.