## SOUTHERN IRON & EQUIPMENT COMPANY v. LUCIUS J. SMITH, Appellant.

#### In Banc, April 2, 1914.

1. **INSTRUCTION:** Suit on Contract for Rented Engines: Not Suited for Use. Where the contract entered into for the rent of engines recited that they were rented to defendant "for use in construction service in Arkansas and Louisiana, all of said engines having been overhauled and in first class condition," and there is evidence that they were unsuitable and incapable to perform the work for which they were rented, it was error to give an instruction, in the suit by the owner to recover the rent mentioned in the contract, to the effect that if the jury found the engines were in first class operative condition when they were delivered to defendant, they would find for plaintiff, even though they were not suitable for and would not do construction work in Arkansas and Louisiana; and it was likewise error to refuse an instruction for defendant telling the jury that if the engines were not suited and capable of doing the work mentioned in the contract plaintiff could not recover.
   *Held* by GRAVES and FARIS, JJ., concurring in an opinion by BLAIR, C., that on the evidence offered the instructions given were more favorable to defendant than those he himself asked and that he was, therefore, in no position to complain of them.

2. **EVIDENCE:** Conclusion of Expert Witness: Ultimate Fact. Questions asked an expert witness in a form calling for an answer in the language of the ultimate fact to be found by the jury, are erroneous. For instance, where the condition of the rented engines at the time they were delivered to defendant was one of the ultimate facts to be found by the jury, the witness should not have been asked, "In what condition were

the engines?" or "In what condition was the machinery part of the engines?" but the question should have called for a statement of the facts from which the jury could draw a conclusion as to their condition, the record revealing that counsel had no trouble in pointing out particularly each part of the engines, its condition and defects, and experts should be able to describe the parts and their defects with equal particularity.

*Held,* by GRAVES and FARIS, JJ., concurring in an opinion by BLAIR, C., that persons who are skilled in the making or repairing of intricate machines and who are familiar with the identical machines in question, are permitted to give expert testimony as to the condition of the machines as respects their state of repair or defectiveness, and the machines being locomotives there was no error in permitting the experts to state the engines were in good condition without requiring them previously to state the particular facts upon which they based their opinions.

3. **RENTED ENGINES:** Damages for Injury. Expenses incurred in repairing the rented engines are incidental to the contract of lease. If they were suitable for the work for which they were rented and would perform that work by proper management, and the renter caused the injuries thereto by bad management, the owner is entitled to recover the costs of repairing them, along with the rents; if they were never suitable for said work and the expenditures were made by the owner in an attempt to make them suitable, the owner cannot recover for such expenses or the rents; and if said engines were not suitable for the work and were not of the character contracted for, and the renter in good faith expended money in trying to bring them to a suitable condition, he is entitled to recover, upon a counterclaim, not only the amount reasonably expended in so doing, but loss caused by delay due to their defective condition.

*Held* by GRAVES and FARIS, JJ., concurring in an opinion by BLAIR, C., that the jury having found against defendant on the issue as to the condition of the engines at the place of delivery, the owner was entitled to recover for expenses caused in restoring the engines to such condition, and the renter is not entitled to recover any expenses made by him in repairing the injuries due to misuse by his employees or any damages resulting in delay in the construction work for which the engines were rented.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell,* Judge.

REVERSED AND REMANDED.

*John A. Eaton, Dudley W. Eaton, Edmund H. Mc-Vey* and *Hyden J. Eaton* for appellant.

(1) The contract is one of bailment for mutual benefit. (a) It contained a warranty or agreement that the engines were fit and suitable for use in construction service in Arkansas and Louisiana. (b) It contained an express agreement or warranty that the engines had been overhauled and were in first-class operative condition. (c) Under the contract the engines were intended for the specific purpose of operation and use in construction work in Arkansas and Louisiana. This intended use was understood by the parties. The contract expresses the warranty of suitability which the law would imply were the contract silent upon that subject. (d) The trial court erred in each of the instructions given to the effect that the condition of the engines was to be determined at the point of delivery, not at the point where they were to be used. (e) The trial court erred in eliminating from defendant's instructions the words "and were suitable for," and in giving the instructions so modified, thus eliminating from the instructions the issue of the suitability of the engines for the use for which they were hired. (f) The appellant was entitled to try and test the engines at the point of use as named in the contract and thus determine whether they were suitable and fit for the purposes for which they were hired. Bass v. Cantor, 24 N. W. (Ind.) 147; 6 Cyc. 179; Conn v. Hunsberger, 73 Atl. (Pa.) 324; Baker & Lockwood Mfg. Co. v. Clayton, 90 S. W. (Tex.) 519; The Nimrod, 141 Fed. 215; Leavitt v. Fibreloid Co., 196 Mass. 440, 15 L. R. A. (N. S.) 855; Skinner v. Glass Co., 103 Mo. App. 650; Nichols & Shepard Co. v. Bryeans, 116 Mo. App. 693; Implement Co. v. Parmer, 128 Mo. App. 300; Mark v. Cooperage Co., 204 Mo. 242; Moore v. Koger, 113 Mo. App. 423; Tufts v. Verkuyl, 124 Mich. 242; Compressed Air Co. v. Fulton, 148

S. W. 422; Eckard v. Transit Co., 190 Mo. 193; Gibler v. Railroad, 129 Mo. App. 93; Jenkins v. Clopton, 141 Mo. App. 74; McQuillan on Instructions to Juries, sec. 118.   (2)   Respondent was not entitled to recover for the engines while they were being repaired pursuant to the St. Louis agreement, and was not entitled to recover the contract price for any use made of the engines after the St. Louis agreement.  (3)   A large part of respondent's evidence in chief consisted of mere conclusions and opinions of the witnesses which were not competent and should have been excluded.   Spaulding v. Edina, 122 Mo. App. 69; Dammann v. St. Louis, 152 Mo. 199; McMahon v. Dubuque, 77 N. W. (Iowa) 518;   Atherton   v.   Bancroft,   72   N.   W.   (Mich.) 209;   Topeka   v.   Sherwood,   39   Kan.   690.     (4) The   instruction   given   at   the   request   of   plaintiff   on   the   second   count   was   erroneous   and inconsistent with Instruction number 9 given at the request of the appellant.   Gardner v. Met. St. Ry., 223 Mo. 389; Kelly v. United Railways, 153 Mo. App. 114; Stid v. Railroad, 236 Mo. 382; Bowan v. Epperson, 136 Mo. App. 571; McQuillan on Instructions to Juries, sec. 156; State v. Harrell, 97 Mo. 105; Redpath v. Lawrence, 42 Mo. App. 101; Bluedorn v. Railroad, 108 Mo. 439; Frank v. Railroad, 57 Mo. App. 181; Oil Co. v. Drug Co., 74 Mo. App. 446; Shoe Co. v. Sheperd, 96 Mo. App. 698; Vermillion v. Parsons, 118 Mo. App. 260; Hurst v. Railroad, 117 Mo. App. 25.   (5)   The appellant was entitled to read all of the cross-examination of the witness Leonodis Shannon and was entitled to read the portion of such cross-examination which respondent withdrew and declined to read. State ex rel. v. Gans, 72 Mo. App. 640; Watson v. Race, 46 Mo. App. 552; Johnson v. Blell, 61 Mo. App. 37; Green v. Chickering, 10 Mo. 109; McClintock v. Curd, 32 Mo. 411.   (6)   The petition sought to recover rental upon the engines after the termination of the original agreement under an allegation that such original agreement

was extended according to its terms. The proof
showed that appellant did not retain the engines under
said contract but under another agreement or arrange-
ment made at St. Louis after the expiration of the
four months' term mentioned in the original agree-
ment. Respondent was not entitled therefore under
the petition to recover any rental on the engines after
the expiration of said four months period. Chambers
v. Hotel Co., 154 Mo. App. 249; Canaday v. United
Railways, 134 Mo. App. 282; Adams v. Railroad, 149
Mo. App. 278; Bank v. Romine, 154 Mo. App. 624;
Henry County v. Bank, 208 Mo. 209; Henry County
v. Bank, 208 Mo. 238; Haynor v. L., P., H. & W. Co.,
129 Mo. App. 691. (7) The evidence showed that ap-
pellant paid the freight upon the engines from Atlanta
to Simms, that he expended sums of money in repairing
the engines and in attempting to operate them and to
put them in condition to do his work, and after find-
ing they were unsuitable employed a watchman to
look after the engines, whose compensation appellant
paid. The trial court erred in its charge to the jury
upon appellant's counter-claim to recover these ex-
penditures. Neil v. Store Co., 149 Mo. App. 53; Mor-
row v. Railroad, 140 Mo. App. 200. (8) The trial
court erred in withdrawing from the jury appellant's
counter-claim. Stewart v. Patton, 65 Mo. App. 21;
Gildersleeve v. Overstolz, 90 Mo. App. 518; Mark v.
Cooperage Co., 204 Mo. 242; Conn v. Hunsberger, 73
Atl. (Pa.) 324; The Nimrod, 141 Fed. 215; 13 Cyc. 33.

*White, Thornton & Holloman, Robert O. McLin*
and *T. W. Holloman* for respondent.

(1) The instructions fully covered all the war-
ranties of the contract. The question of suitability,
or fitness, was not raised at the trial by the pleadings
and the evidence, or either of them, except on the
question of the condition of locomotives as to whether

they complied with the contract, as to having been overhauled, and being in first-class operative condition for use in construction service in Arkansas and Louisiana, and the instructions were properly confined to the issues presented by the pleadings and the evidence. Black v. Met. St. Ry., 217 Mo. 683; Mark v. Cooperage Co., 204 Mo. 262; Waddingham v. Hulett, 92 Mo. 528; Duke v. Railroad, 99 Mo. 351; Barr v. Kansas City, 105 Mo. 559; Sinnamon v. Moore, 142 S. W. (Mo. App.) 497. (2) The trial court did not eliminate from the appellant's instructions numbers 5 and 6, as asked, the issue of suitability, or withdraw any defense, by eliminating from appellant's instructions 5 and 6 the words "and were not suitable," for the reason that such instructions, as asked, did not present any such issue or defense, separate and apart from the question of first-class operative condition for use in construction service in Arkansas and Louisiana. And by striking out the words "and were not suitable" the court relieved appellant of a burden he voluntarily attempted to assume, that the law did not cast upon him under the pleadings and the evidence; the instructions given being more favorable to appellant than those asked. McHugh v. Transit Co., 190 Mo. 96. (3) And even if appellant was correct in his contention as to an implied warranty, instructions 5 and 6 as asked were fatally defective, in leaving out the word "reasonably" before the word "suitable." Seitz v. Machine Co., 141 U. S. 518; Mark v. Cooperage Co., 204 Mo. 264; Smith v. Brunswick, 61 Mo. App. 580; The Nimrod, 141 Fed. 216; Skinner v. Glass Co., 103 Mo. App. 659; Brewing Assn. v. McEnroe, 80 Mo. App. 431; Armstrong, Gilbert & Co. v. Tobacco Co., 41 Mo. App. 258; Bridge Co. v. Hamilton, 110 U. S. 116; 5 Cyc. 179. (4) The trial court in no way denied the appellant's right to try and test the locomotives at Simms, Louisiana, or at any other place, and the court allowed the appellant to give to the jury all of the evidence he

offered pertaining to the condition or uses of the loco-motives, without any restriction whatever, as to the time or place of such trial or test, covering the entire period of time that the engines were in appellant's possession; and the trial court correctly instructed the jury that, in determining whether the locomotives in question were overhauled and in first-class operative condition, they must determine from the evidence what was their condition at the time and place they were delivered to the appellant by respondent. Blooms' Son Co. v. Haas, 130 Mo. App. 122; State v. Rosenberger, 212 Mo. 648; State v. Wingfield, 115 Mo. 428; Comstock v. Affoelter, 50 Mo. 411; Gill v. Comm. Co., 84 Mo. App. 460; Scharf v. Meyer, 133 Mo. 428; Gardner v. Met. St. Ry., 223 Mo. 413.    (5)   No implied warranty that a machine or other article is suitable or reasonably suitable to accomplish a particular purpose or to do a specific work arises, where a bailee leases a specific, described or definite machine or other article, although the bailor knows the particular purpose or work which the bailee intends to accomplish with it. The extent of the implied warranty in such a case is that the machine or other article shall correspond with the description and shall perform the ordinary work which the described machine or other article is made to do.   And the more is this the case where the specific machine itself was selected, as in the case at bar.   Seitz v. Refrigerating Co., 141 U. S. 518; Mark v. Cooperage Co., 204 Mo. 264; Drill Co. v. Mallory, 137 Fed. 334; Hotel Co. v. Wharton, 24 C. C. A. 443, 79 Fed. 45; Selling Co. v. Jones, 128 Fed. 677, 63 C. C. A. 229; Boiler Co. v. Duncan, 87 Wis. 124; Fairbanks, Morse & Co. v. Baskett, 98 Mo. App. 69; Jones v. Just, L. R. 3 Q. B. 197; Car Co. v. Met. St. Ry., 157 U. S. 108; Schouler, Law of Bailments (2 Ed.), par. 93, p. 106.   (6)   No implied warranty even of reasonable suitability exists as to second-hand locomotives. Morris v. Reinstedler, 90 Mo. App. 626; Mining Co. v. Tegar-

den Bros. 149 S. W. (Ark.) 518; Machine Co. v. Bailey, 89 Ark. 109; Ramming v. Caldwell, 43 Ill. App. 179; Joy v. Bank, 32 Tex. Civ. App. 398. (7) Witnesses who are familiar with the machinery charged to be defective, such as the foreman of car repairs, the foreman of the erecting shop, who is a machinist, machinists employed in the rebuilding of engines, foreman of the steamfitters' department, locomotive engineers, whose business for years has been the testing of locomotives, foreman of the boiler shop, and boiler makers, master mechanics, and a general foreman, who has had large experience as master mechanic and superintendent, and has seen the machinery operated, and has examined and tested all its parts and has been engaged in building and rebuilding locomotives for years in a large company, such as respondent company, which was in the business of rebuilding and overhauling locomotives, steam shovels, coaches and cars, may give opinions based on their own actual knowledge of the condition of the machinery. Particularly is this true where the machinery is of a complicated character like locomotives, and where the terms used are necessarily technical and unknown to the ordinary man; and furthermore, is this true where the witnesses stated in detail the facts on which their opinions were based, thereby affording the opposite party the opportunity to test the correctness of the opinion by cross-examination. Kaminski v. Iron Works, 167 Mo. 462; Haley v. Railroad, 69 Mo. 614; Meily v. Railroad, 215 Mo. 589; Combs v. Construction Co., 205 Mo. 389; Boettger v. Iron Co., 124 Mo. 104; Stotler v. Railroad, 200 Mo. 123; Merritt v. Telephone Co., 215 Mo. 308; Fulton v. Met. St. Ry., 125 Mo. App. 244; Goble v. Kansas City, 148 Mo. 477; Railroad v. De Lissa, 103 Mo. 130; Railroad v. Calkins, 90 Mo. 543; Eyerman v. Sheehan, 52 Mo. 221; Jackson v. Grand Ave. Ry., 118 Mo. 199; Lawson on Expert and Opinion Evidence (1 Ed.), chap. 5; 3 Wigmore on Evidence (1 Ed.), par. 1976, pp. 2618;

Railroad v. Urlin, 158 U. S. 271; Railroad v. Watson, 190 U. S. 287; McGowan v. Tan Bark Co., 121 U. S. 575; Hill v. Sturgeon, 28 Mo. 329. (8) Instruction given for plaintiff on second count was correct, and did not conflict with appellant's instruction number 9, which was given as requested by appellant. The two instructions fully submitted every issue raised by the second count of the petition and the appellant's answer thereto, the second count being for a matter not in any way connected with the contract sued on in the first count of the petition. Block v. Met. St. Ry., 217 Mo. 683; Mark v. Cooperage Co., 204 Mo. 262; Waddingham v. Hulett, 92 Mo. 528; Duke v. Railroad, 99 Mo. 351; Barr v. Kansas City, 105 Mo. 559; Woodward v. Cutter, 33 Ver. 49; Trust Co. v. Railroad, 50 Fed. 857.

WOODSON, J.—This suit was instituted in the circuit court of Jackson county by the plaintiff to recover of defendant rent claimed to be due it on three locomotive engines and certain expense and repairs made upon them by plaintiff.

The petition was in two counts, the first was for rent and the second was for the expense and repairs.

A trial was had which resulted in a judgment for the plaintiff for the full amount sued for in each count, aggregating $11,705.70. From this judgment the defendant appealed to this court.

The litigation grew out of the following contract made and entered into by and between the plaintiff and defendant regarding the engines previously mentioned, viz.:

"*Memorandum of agreement between Southern Iron & Equipment Co. of Atlanta, Georgia, and L. J. Smith of Simms, Louisiana.*

"First, Southern Iron & Equipment Co. agree to rent, or lease, to L. J. Smith three locomotives for use

in construction service in Arkansas and Louisiana, on the following terms and conditions:

"Locomotive No. 627, Schenectady 18x24-inch ten wheeler with 50-inch centers; locomotive No. 625, 20x24-inch consolidation with 44-inch centers; and locomotive No. 618, Schenectady 18x24-inch six driver switcher, all of said engines having been overhauled and in first class operative condition. The price to be paid by L. J. Smith to the Southern Iron & Equipment Co. for said engines is $345 per month for each engine from the time engines leave our shop until returned to our shop, with an allowance of four days free time on the going trip.

"Second, The said L. J. Smith agrees to take good and reasonable care of the locomotives, using them on single shift, that is, not exceeding ten or twelve hours out of twenty-four hours per day, and not exceeding six days per week, and return same to the Southern Iron & Equipment in as good condition as when received, usual wear and tear excepted.

"Third, Said L. J. Smith shall have the privilege of purchasing all or any one of the three above-mentioned locomotives at the following prices: Locomotive No. 625, $5600; No. 627, $5800; No. 618, $4850. In the event he decides to do so, the rental for that current month shall be applied to the purchase price.

"Fourth, Payments to be made by the 20th of the month for the rental for the preceding month. This trade to cover period of four months, the said L. J. Smith having the privilege of retaining the engines for a longer period on the same basis.

"Executed in duplicate this —— day of February, 1908."

The appellant's evidence tended to show the following facts:

That the appellant was a railroad contractor and was engaged in ballasting and surfacing portions of the lines of the St. Louis, Iron Mountain & Southern Rail-

way Company, in the States of Arkansas and Louisiana. In order to do that work appellant had to use stone and other suitable materials, which had to be transported some distance over the tracks of the railway company. This, of course, necessitated the procurement of engines. With that object in view the appellant applied to respondent for the three engines mentioned, and on February 3, 1908, the former went to the shops of the latter in Atlanta, Georgia, and made known his wants; and after discussing the matter fully with the officers of respondent, and explaining to them the character and location of his business, as well as the purposes for which the engines were to be used, the appellant was shown three engines, Nos. 618, 625 and 627, and was assured that all of them had been recently overhauled and repaired and were in good operating condition.

The appellant made only a casual observation of the engines before making the contract, never saw them fired up or had any opportunity to see how they would work. In fact, the evidence shows that appellant was not an engineer, and knew but little about their condition or suitability for work, and so told Mr. Kern, the president of the respondent. Also told him that he was not competent to inspect the engines and had no one there to do it for him. In reply Mr. Kern said it was not necessary, that the engines had just been through the shops and were in first class working condition and that he would put that in the contract.

That knowing practically nothing about engines, appellant relied upon the respondent's statements of Mr. Kern, as to their condition and their suitability for the purposes mentioned and for that reason entered into the contract previously set out.

That the engines were drawn as freight and not propelled by their own power from Atlanta to Simms, Louisiana. From Atlanta to Memphis the servants of

respondent attended the engines and from the latter place to Simms those of appellant were in charge.

That the engines were carefully attended and properly handled from the time they left Atlanta until their arrival at Simms, and especially from Memphis to the latter point.

That upon the arrival of the engines at Simms they were fired up and put into service, but after proper and fair trials they wholly failed to perform the work designed and called for in the contract. That upon examinations made by capable men in that business, the engines were found to be mechanically defective and out of repair in many respects, totally unfit to perform the services for which they were rented—not capable of pulling one-half of the tonnage they were designed to draw, and thereby doubling the expense of carriage and rendering them utterly useless to the appellant.

That after several days of trials of the engines, and after one of them had been twice taken to the shops in Alexandria for repairs, the appellant, by numerous letters and telegrams notified the respondent of their worthless condition and requested Mr. Kern to send a man to Simms to investigate and repair the defects. That these defects were so numerous it would be trespassing upon time and space to recite them here; a number of which, if they existed, would render the engines absolutely worthless. That the only reply appellant received was a denial that the engines were defective or were not suitable for the purposes as rented. That finally, on February 25th, 1908, Mr. W. A. Love, vice-president of the respondent, went to Simms and looked over the engines, but made no effort whatever to put them in useful condition; and thereupon the appellant stored the engines upon a side track, in charge of a watchman, and notified respondent that they were held at its risk and subject to its orders.

That during the time the engines were in the possession of the appellant they were never used except in the trials previously mentioned. That, in fact, they were not only of no value to appellant, but were of great cost and expense in trying to use them in the matter of wages, fuel, loss of time, storage, etc.

That at the solicitation of Mr. Kern, the president of respondent, the appellant met him on June 10, 1908, in the city of St. Louis, for the purpose of conferring with reference to the condition of the engines and as to what should be done with them. After fully discussing the matter it was agreed between them that Mr. Kern should send the foreman of his shop to Simms, where the engines had been stored, and go over them for the purpose of seeing whether or not they could be made to perform the work mentioned in the contract. That in pursuance to that consultation, the respondent sent George Bird to Simms, who carefully inspected the engines, without making a report, as I understand the record, to the appellant, and caused them to be removed to a machine and boiler shop at Alexandria, for the purpose of making the repairs that were necessary to put them in operating condition, which cost several hundred dollars. After these repairs had been made the engines were returned to appellant for use; but after repeated trials they were found to be wholly incapable to perform the work for which they were rented.

The evidence also tended to show that they were old, antedated engines, worn out and absolutely worthless.

After these futile tests had been made, the appellant caused the engines to be returned to respondent, at its shops in Atlanta, Georgia; two of them arriving on November 18, 1908, and the other December 5th of the same year.

The evidence for the respondent contradicted the evidence of the appellant in almost every particular,

except that the engines came up to the provisions and terms of the contract, regarding their capacity to do the work of appellant in Arkansas and Louisiana; but it did tend to show that they were in first class operating condition when they left Atlanta, and of course that had some probative force upon their capability to do the work in the States mentioned.

At the close of the plaintiff's and at the close of all the evidence in the case, the appellant requested the court to give a peremptory instruction telling the jury to find for him, which was by the court refused, and appellant duly excepted.

I.   There are but three questions presented by this appeal for determination: first, did the evidence make out a prima-facie case for the jury; second, did the court properly instruct the jury as to the capability of the engines to perform the work for which they were rented in the States of Arkansas and Louisiana; and, third, did the court err in permitting expert witnesses to express opinions as to the facts of the case, which were the ultimate facts required to be found by the jury?

*Prima-facie Case.*

Regarding the first:   After carefully reading the evidence in the case, covering some three hundred and fifty pages, we are fully satisfied that a prima-facie case was made out for the jury; and that the court properly refused to sustain the demurrer to respondent's evidence at the close of its case, and to give, at the close of all the evidence in the case, the peremptory instruction telling the jury to find for the appellant.

II.   Attending the second:   In substance, the court instructed the jury on behalf of respondent over the objections and exceptions of counsel for appellant, that if they found from the evidence that the engines when delivered to appellant in Atlanta, Georgia, were in first class operating condi-

*Rented Engines: Worthless for Use: Instruction in Keeping With Contract.*

tion, then they would find for the respondent, even though they might further find that as a matter of fact the engines rented were not suitable for, nor would do the work in Arkansas and Louisiana, mentioned in the contract.

Counsel for appellant asked an instruction to the converse of that asked by the respondent, which was by the court refused, and counsel duly excepted.

Clearly the action of the court in giving the former for respondent and refusing the latter for appellant was error.

Not only did the contract entered into between the parties disclose the fact that the engines were designed to be used for a particular character of work, but also that the work was to be performed in the States of Arkansas and Louisiana, using this language: "First, Southern Iron & Equipment Co. agrees to rent, or lease, to L. J. Smith three locomotives *for use in construction service in Arkansas and Louisiana,* on the following terms and conditions." Then follows the numbers and descriptions of the engines, and then continues: "*all of said engines having been overhauled and in first class operative condition.*"

This language has but one meaning, namely, that appellant rented three engines from respondent for "construction service in Arkansas and Louisiana," and that the latter agreed that they were "*in first class operative condition,*" for the purpose of doing that work.

The contract specifically states the kind of work for which the engines were leased; the place where the work was to be done, and then warrants that they had recently been overhauled and were in first class operating condition. This language is too plain for argument, and it would but tend to confuse its meaning by discussing it further.

An abundance of evidence was introduced by appellant tending to show that the engines were prac-

tically worthless for the purposes for which they were leased; and if that was true, then there was a clear breach of the warranty and the respondent was not entitled to a recovery, and the court should have so told the jury in proper instructions.

The respondent's theory of the case was that if the engines in question were *mechanically* "in first class operating condition" when they left Atlanta, then the contract had been fully performed upon its part, and that it was entitled to a recovery. That is clearly an erroneous construction of the contract, for the simple reason that it totally ignores the fact that it provides that they were leased for construction purposes in Arkansas and Louisiana, and that they had recently been overhauled, and were in first class condition for that work.

These views of the law have been so fully and clearly discussed by this and other courts of the country, nothing new can be said upon the subject. [5 Cyc. 179, (III) and cases cited; Mark v. Williams Cooperage Co., 204 Mo. 242; Moore v. Koger, 113 Mo. App. 423; Tufts v. Verkuyl, 124 Mich. 242; Bass v. Cantor, 123 Ind. 444; Conn v. Hunsberger, 224 Pa. St. 154; Ferguson Implement Co. v. Parmer, 128 Mo. App. 300; Leavitt v. Fiberloid Co., 196 Mass. 440; Blackmore v. Fairbanks, Morse & Co., 79 Iowa, 282.]

III. The third proposition presented by the appeal, as previously stated, is in regard to the soundness of the rulings of the court in permitting expert witnesses to give their opinions as to the ultimate facts in the case which had to be found by the jury, in order to determine whether or not the engines were in first class operating condition for the purposes leased.

Expert Testimony: Conclusion: No Statement of Facts.

The appellant's evidence tended to show in many details the defective conditions of the engines when they reached Simms, Louisiana, and that it was because of those defects the engines were not in first class operating condition, and for that reason would not do the work. It was for repairing those defects, if I correctly understand the record, respondent made and charged appellant $748.70, which constitutes the subject-matter of the second count in the petition; and by an examination of the itemized account presented to appellant for the labor performed and materials furnished in that regard, which consists of hundreds of items, I would judge that there was scarcely a sound bolt or piece of machinery existing in the entire three engines. Whether this statement is perfectly accurate or not, is immaterial, but being largely so, it serves just as well to preface the objections made to the testimony of the expert witnesses.

Those questions, objections and answers are so numerous and lengthy that it would be a useless waste of time and labor to undertake to set them out; and we will therefore only refer to the substance of a few of them.

The character of questions were continually asked, "In what sort of condition" was this or that part of the engine? "In what condition were the engines?" "In what condition was the machinery part of the engine?" "In what sort of condition was the woodwork of the engine?"

Counsel for appellant have also selected from the record ten pages of these classes of questions.

Objections were properly and timely made, and in practically every instance the witness would answer substantially as follows: "In good condition." "They were good." "The condition was good." "They were in first class order." "It was in first class condition" and so on to the end of the chapter.

In passing, it might be pertinent to ask, that if the engines were in such perfect condition when they left Atlanta, why did they need so many repairs when they reached Simms, in the absence of any evidence that any of them were in a wreck or received any violent treatment other than that incidental to having been pulled by another engine along the railway tracks?

None of these questions called for a statement of the facts as to what was the real condition of any one or more of the engines or as to the condition of any portion of them. The questions called for conclusions and in each and every instance the answer was a conclusion; thereby telling the jury the condition of things instead of stating the facts and leaving the jury to determine the conditions.

It cannot be sincerely contended that the witnesses could answer the question in no other way, for two reasons: first, because the questions should not have been propounded in that form; and, second, by an examination of pages eleven to twenty-four of respondent's abstract of the record, it will be seen that counsel had no trouble whatever in pointing out particularly each and every portion of the engines, their condition, the defective parts thereof, and the repairs that had to be and were made. This being true, as shown by the respondent's petition, it seems strange that these expert witnesses could not with equal particularity have described those matters to the jury, while upon the witness stand.

The object of that class of testimony is perfectly apparent. The design was to make the statements of conclusions to the effect that the engines were in the condition called for by the contract of lease, when they left Atlanta, and that they were either put out of commission by damage in transit or that the appellant wanted to repudiate his contract. Diversion: If either of those facts were true then there was mighty little evidence introduced to support it, especially in

comparison to the bald fact that they were not suitable for the work stated in the lease. Returning: Had the expert witnesses been required to state the exact conditions of the various parts of the engines, as they or some other experts evidently did in the preparation of the petition and in the proof regarding the repairs, then the jury could have seen those parts with their vices and virtues regarding which neither party to the suit found any trouble in pointing out when it came to the repairs which had to be particularized.

Moreover, there is another view to take of this evidence. Suppose for instance, the respondent had introduced five expert witnesses and each of them had been asked the identical question propounded in this record and that they had given the identical answer here recorded; and suppose upon the other hand the appellant had introduced five other experts and had asked them the same question, and they had given answers directly to the contrary, what on earth would the jury have known about the case? Absolutely nothing; and it would be no answer to say that the jury would be the judges of the credibility of the witnesses and the weight to be given to their testimony, for the simple reason that after so doing they would not know a single fact in the case and consequently must have delegated their functions as jurors to the five experts upon the one side or the other, to decide the case.

But not so where the same number of witnesses testify diametrically opposite to each other regarding some fact, for the simple reason that in such case the jury may not only judge of the weight and credibility to be given to testimony of the witnesses, but they would have the right to resort to their own knowledge and experience regarding such facts, the probability or improbability of the truthfulness of their statements, as well as their position and opportunity to have seen and heard what transpired; but nay! not so

with expert witnesses; they testify regarding matters with which the jury has no knowledge or experience whatever; the jury cannot resort to their knowledge and experience of the facts about which such witnesses testify and cannot therefore call into requisition those God-given faculties, in passing upon the credibility or the weight to be given to the testimony of such witnesses, without, as in ordinary cases, their questions and answers are predicated upon facts otherwise established by other evidence in the case.

But in this case the trial court permitted the experts to state their opinions without stating the facts upon which they were based. There is no law for any such contention.

This rule has been so often announced by this and other courts, it is passingly strange that the question should be continually presented here for determination. [Castanie v. Railroad, 249 Mo. 192; Smart v. Kansas City, 208 Mo. 162; Spaulding v. Edina, 122 Mo. App. 1. c. 69; Dammann v. St. Louis, 152 Mo. 186; McMahon v. City of Dubuque, 107 Iowa, 62; Atherton v. Village of Bancroft, 114 Mich. 241; City of Topeka v. Sherwood, 39 Kas. 690.]

IV. There are several other propositions presented and discussed by counsel for the respective parties, but when the questions disposed of are given their full force and effect, it will be seen that all others are but incidental to them, and must be controlled thereby.

A word regarding the materials alleged to have been furnished and the labor performed by respondent in repairing the engines, etc.; they are Damages to strictly incidental to the lease, and if Rented Engines. the engines were suitable for the work contracted for in Arkansas and Louisiana and would perform the work by proper management and the appellant caused the damages which respondent claims

he did, and for that reason it became necessary for the respondent to expend the money for the materials and labor furnished, then the former should pay for the reasonable cost thereof; but if the engines were never suitable for the work and said expenditures were made for the purpose of trying to make them suitable, then the appellant is not responsible for the rents of the engines, nor for the said expenditures; but the respondent may be responsible if the evidence shows liability, as claimed in the answer, for the damages claimed by appellant.

Entertaining these views of the case, we are of the opinion that the judgment of the trial court is erroneous and should be reversed and the cause remanded with directions to grant a new trial and proceed with the case in conformity to the views herein expressed.

It is so ordered. All concur, except *Graves* and *Faris, JJ.,* who dissent in a separate opinion by *Graves, J.*

## DISSENTING OPINION

GRAVES, J.—I dissent in this case. I think the opinion of BLAIR, Commissioner, in Division One, properly disposes of the case, both as to the law and the facts, and I file herewith his said opinion as an expression of my views of the case, and as my dissent to the present opinion of the majority. *Faris, J.* concurs in these views.

BLAIR, C.—Defendant appeals from a judgment for plaintiff for a total sum of $11,706.89 rendered in the circuit court of Jackson county.

There are two counts in the petition. The first is grounded on a contract for the rental of three locomotives and a claim for damages for defendant's violation of a provision of the rental contract relating to the condition in which the engines were to be returned

to plaintiff. The second count is for the recovery of sums alleged to have been expended by plaintiff, at defendant's request, in repairing the engines after they were delivered to defendant and prior to his return of them to plaintiff.

The petition alleged that the rental contract was verbal, but that plaintiff agreed to make a written memorandum thereof and send it to defendant, who agreed to sign and return it; that plaintiff made the agreed memorandum and sent it to defendant who failed to sign and return it, and that "the said written memorandum embodies the terms and figures of the said verbal contract."

The answer denies the making of any verbal contract and avers that "each and all of the terms of the contract between plaintiff and defendant were reduced to writing, were signed by plaintiff, delivered to defendant, and the terms thereof accepted by him, and such written contract covered all of the terms and agreements of whatsoever nature or character existing in respect to the several matters and things alleged and stated in plaintiff's petition as between plaintiff and defendant, a copy of which said contract is in the possession of said plaintiff."

It is agreed that the memorandum of contract thus referred to in the petition and answer is as follows:

"*Memorandum of agreement between Southern Iron & Equipment Co. of Atlanta, Georgia, and L. J. Smith of Simms, Louisiana.*

"First, Southern Iron & Equipment Co. agree to rent, or lease, to L. J. Smith three locomotives for use in construction service in Arkansas and Louisiana, on the following terms and conditions:

"Locomotive No. 627, Schenectady 18x24-inch ten wheeler with 50-inch centers; locomotive No. 625, 20x24 consolidation with 44-inch centers; and locomotive No. 618, Schenectady 18x24-inch six driver switcher, all of said engines having been overhauled and in first-class

operative condition. The price to be paid by L. J. Smith to the Southern Iron & Equipment Co. for said engines is $345 per month for each engine from the time engines leave our shop until returned to our shop, with an allowance of four days free time on the going trip.

"Second, The said L. J. Smith agrees to take good and reasonable care of the locomotives, using them on single shift, that is, not exceeding ten or twelve hours out of twenty-four hours per day, and not exceeding six days per week, and return same to the Southern Iron & Equipment in as good condition as when received, usual wear and tear excepted.

"Third, Said L. J. Smith shall have the privilege of purchasing all or any one of the three above mentioned locomotives at the following prices: Locomotive No. 625, $5600; No. 627, $5800; No. 618, $4850. In the event he decides so to do, the rental for that current month shall be applied to the purchase price.

"Fourth, Payment to be made by the 20th of the month for the rental for the preceding month. This trade to cover period of four months, the said L. J. Smith having the privilege of retaining the engines for a longer period on the same basis."

The answer further averred that plaintiff had violated its contract in specified particulars and set up a counterclaim for sums averred to have been expended in caring for and attempting to put the engines in operating condition and in attempting to operate them and also for damages for loss of the use of the locomotives and for the resultant delay in prosecuting the work for which they were secured and for sums expended for the rental of other engines instead of those plaintiff contracted to furnish.

There was evidence of the condition of the locomotives at Atlanta and on their arrival at Memphis and at Simms, Louisiana, where defendant intended

to use them, and of their condition subsequent to that time.

For present purposes it will suffice to state that there was evidence tending to prove plaintiff's compliance with its contract and also evidence tending to prove the contrary.

The instructions are voluminous; and while it will expand this opinion more than is to be desired, the character of the questions raised makes it necessary to set some of them out.

On the first count the defendant asked several instructions which the court modified and gave as thus amended. These instructions as given are here set out, the words inserted by the court being in italics and the words stricken out by the court appearing in parenthesis.

"2. The court instructs the jury that there is no dispute between the plaintiff and defendant upon the terms of the contract so far as the same provides that the locomotives in question were to be, when rented or leased to the defendant, in first class operative condition, that said locomotives were rented or leased for use in construction service in the states of Arkansas and Louisiana, and that the term or period for which the locomotives were rented or leased was four months, *with the privilege on the part of Smith to retain the engines for a longer period on the same basis.*"

"3. The court instructs the jury that if you find from the evidence that the locomotives in question were not in first class operative condition *when delivered to defendant,* and for that reason could not be reasonably used for construction service in Arkansas and Louisiana during the period of four months named in the contract, then the plaintiff will not be entitled to recover in this action any sum or amount for the rent of said locomotives during said period of four months.

"5. The court instructs the jury that if you find from the evidence that at the time plaintiff rented to

the defendant the engines in question, plaintiff agreed with the defendant that said engines were in first class operative condition for use in construction service in Arkansas and Louisiana, and if you further find from the evidence that said engines were not in first class operative condition (and were not suitable) for use in construction service in Arkansas and Louisiana *when delivered to defendant,* then plaintiff will not be entitled to recover in this action any rental during the four months' period mentioned in the contract, even though you may believe from the evidence that defendant's construction work in Arkansas and Louisiana was delayed or hindered by wet weather or by the breaking down of the machinery and apparatus used by the defendant in such service.

"6. The court instructs the jury that if you find from the evidence that at the time of the renting of the engines in question plaintiff agreed with the defendant that the same were in first class operative condition and were suitable for use in construction service in Arkansas and Louisiana, and if you further find from the evidence that said engines were not in first class operative condition (and were not suitable) for construction service in Arkansas and Louisiana *when delivered to defendant* then plaintiff will not be entitled to recover in this action any rental during the four months' period mentioned in the contract, even though you may believe from the evidence that shortly after the renting of said engines the defendant, by reason of wet weather or other circumstances, ceased work at Simms, Louisiana, and moved his construction camp and outfits from Simms, Louisiana, to Paragould, Arkansas.''

For plaintiff the court gave, among others, the following instruction:

"The court instructs the jury that in determining whether the locomotives in question were overhauled and in first class operative condition, they must de-

termine from the evidence what was their condition at the time and place they were delivered to defendant by plaintiff; and if the jury believe from the evidence that the defendant directed the plaintiff to ship said locomotive from Atlanta, Georgia, by way of Seaboard Airline Railroad, and plaintiff delivered said locomotive to said railroad in Atlanta, Georgia, for shipment, or delivered said locomotives to messengers of defendant, at defendant's request, in said Atlanta, Georgia, then the court declares the law to be that plaintiff delivered said locomotives to defendant at Atlanta, Georgia.''

I.  It is insisted that by eliminating from defendant's instructions the words ''and were not suitable'' and inserting therein the words ''when delivered to defendant,'' the court limited the jury to the consideration of the condition of the engines at Atlanta and precluded consideration of the warranty of suitability.

Instructions 5 and 6 as offered by defendant required the jury, before finding for defendant thereunder, to find (1) that ''said engines were not in first class operative condition;'' and (2) ''were not suitable for use,'' etc.

1.  By striking out the words ''and were not suitable'' the trial court thereby authorized a finding for defendant if the jury found the single fact that the engines ''were not in first class operative condition for use in construction service,'' etc., thus relieving defendant of the burden of securing from the jury a finding on the evidence that the engines were not suitable for such use.  The modified instructions thus required less of defendant than in their form as requested by him.  Of this he cannot complain.  It is not true, as suggested in the reply brief, that the elimination of the words mentioned from instructions 5 and 6 withdrew from the jury's consideration an affirmative defense.  Had the instruction as offered directed the

desired finding if the engines "were not in first class operative condition *or* were not suitable for use," etc., the situation might have been different.

Counsel take the position in their brief in this court that there were, under the contract, two warranties—one of first class operative condition and one of suitability for the intended service—and that a failure' to make good either warranty entitled defendant to a verdict, but they did not take that position in the instructions being considered. Those instructions, as pointed out, required the jury to find *both* warranties breached before returning a verdict for defendant. Let it be conceded that there were two separate warranties as contended, then it follows, as argued, that the breach of either entitled defendant to a verdict. The modified instructions authorizing a verdict for defendant on finding a breach of the warranty of first class conditions were, in that respect, entirely sound. So others predicating a verdict for defendant on a finding of a breach of the other separate warranty would also, on the same theory, have been correct, but no such instructions were asked.

2. As we understand the briefs it is not contended there was any error in the instruction concerning the place of delivery but it is the view of defendant's counsel that the court by inserting in instructions 3, 5, 6, 14, which they offered, the words "when delivered to defendant" thereby *limited the proof* of the condition of the engines to the time and place of delivery, and, it is insisted, practically "eliminated from the consideration of the jury the proof offered by defendant as to the operative condition, suitability and fitness of the locomotives to perform the work for which they were hired." This, counsel contend, was erroneous, because, they say, under the warranty mentioned "the operative condition, suitability and fitness of the locomotives for doing the work for which they were hired could not

have been determined except by the application of the locomotives to such use."

If we understand this argument it means that the evidence on the warranties should have been limited to that adduced as to the condition of the engines as developed by defendant's tests at Simms. This cannot be true. Evidence of the character of the engines and of their condition at Atlanta, of the manner in which they were managed while in transit to Memphis in charge of defendant's messenger, of their condition when delivered to defendant and his employees at Memphis, of the manner in which these employees cared for the engines, where they were being taken from Memphis to Simms, as well as evidence of their condition and the way in which they were handled by defendant's employees at Simms, was all competent and was admitted.

There was evidence tending to show that the locomotives had been thoroughly overhauled and were in first class condition at the time they were delivered to defendant and that they were in like condition when turned over to defendant at Memphis by his messengers who accompanied them from Atlanta to Memphis.

There was evidence for defendant that the engines were not in first class operative condition when they arrived at Simms, Louisiana, where defendant designed to use them. There was evidence *pro* and *con* on the question whether defendant's employees took proper care of the engines on the trip from Memphis to Simms and whether certain defects said to have been discovered at Simms existed when the engines were delivered or were due to mismanagement of defendant's employees on the journey. It was a question of fact on the evidence whether many of the alleged defects existed at all when the engines arrived at Simms, and there was evidence tending to show that the defects admitted to exist when plaintiff's employees subsequently examined the engines at Simms were of a char-

acter such as the ordinary operation of engines pro-
duces and had been thus produced or were the result
of careless handling on the part of defendant's em-
ployees while operating the engines.

There is no evidence of any structural defect in
the engines such as to render them unsuitable for con-
struction service, if they were in first class operative
condition, unless the claim that the engines were fitted
with wood grates can be so considered.   Whether the
engines had wood or coal grates was a question of fact
with the evidence apparently preponderating in plain-
tiff's favor on that issue, and it was further a question
for the jury whether the difficulties asserted by de-
fendant to have resulted from the character of the
grates were not in fact due to inferior and dirty coal.

Defendant's evidence of the condition of the en-
gines on their arrival at Simms was admitted and was
before the jury for their consideration on the question
as to the condition of the engines at the time of delivery.
It could not be contended that if defendant's employees
permitted the engines to become damaged in transit
or, by improper or careless management of them, dam-
aged them after their arrival at Simms, that plaintiff's
right to recover would have been affected thereby.

The words added to the instructions by the court
were properly added.   The evidence of the results of
defendant's tests of the engines at Simms was not
conclusive upon the jury, but, under the instructions
given, was to be considered in connection with all the
other evidence upon the question of the condition and
suitability of the engines at the time of their delivery
to defendant.   Defendant is in no position to, and
does not, complain of these instructions in respect to
anything except the modification made by the court.

It is urged that upon the sale or lease of machinery
for a particular purpose the vendee or lessee has the
right to take it and test it and upon such tests deter-
mine whether it is as warranted and, if not, has the

right to reject it. It is not necessary to quarrel with this rule. It is enough to say that the right to test the suitability of the machinery for its intended use does not carry with it any *necessity that a jury believe* the testimony of the witnesses who make or observe the tests and disbelieve other evidence which tends substantially to show that the defects alleged to have been discovered by the tests never existed or were the result of the vendee's or lessee's misuse and mistreatment of the machinery after delivery to him.

The cases upon this question will be found in the briefs accompanying this opinion. A patient examination of them discloses none which is in any wise in conflict with what has been said.

II. It is argued that the court erred in permitting certain witnesses to testify that the engines in question were "in good condition" and give the same opinion, in several instances, concerning designated parts of them. In support of their position counsel cite three cases in each of which the condition of a sidewalk was in issue and in two others in each of which the question was as to the condition of a house. In these cases the rule is announced that expert testimony was not called for, the jury being qualified to draw a correct conclusion from a detailed description of such structures.

In this case the condition of locomotives was in issue. The witnesses were experts of long experience and were qualified to give opinions, if opinions were competent. The engines and their parts and the repairs made upon them at Atlanta are described in the evidence in the greatest detail. The witnesses who testified as to the condition of the engines were the men who had done the actual work of overhauling them or who had superintended that work.

"Persons who are skilled in the making or repairing of machines, or who are versed in their de-

sign or construction, or in the use and management thereof, are permitted to testify . . . as to their quality, capacity, proper operation and state of repair," and "may give expert testimony as to the conditions of machinery as respects its state of repair or defectiveness." [5 Ency. of Evidence, pp. 569, 570, 571.] It is not necessary that a witness who personally knows the condition of the parts of an intricate machine should have a hypothetical question propounded to him as a premise for his opinion or conclusion as to its condition. On the contrary, the fact of his personal knowledge appearing, he may, in a proper case, give his opinion even without himself first testifying in detail as to the results of the observation upon which he bases that opinion. [1 Wigmore on Evidence, sec. 675; Kaminski v. Tudor Iron Works, 167 Mo. l. c. 466, 467.] In this last cited case, upon a quite similar question, this court said:

"To have described a hypothetical machine with all its parts and complications in each question propounded to the witnesses called by defendant, who were shown not only to have been experts in the use of such machinery as was being used by plaintiff where he received his injury, but who had personal familiarity with the identical machine, would not only have been useless, but would have been an idle waste of time to no purpose, and this the law never requires to be done."

The same authorities point out that any defect in the personal knowledge of the witness can be developed on cross-examination and the actual knowledge of the witness thus placed before the triers of the facts to the end that they may determine for themselves the truth of the premises upon which he grounds his opinion.

There was no invasion of the jury's province in any sense. Expert testimony always relates to something the existence of which it is the duty of the triers

of the facts to affirm or deny in reaching a verdict, but it is merely an aid to them in the performance of that duty and not an invasion of their province.

Triers of facts, as has been pointed out, may reject expert testimony as well as any other, and to concede that expert testimony prejudicially invades their province simply because it takes the form of an opinion upon a question of fact necessary to be determined in reaching a verdict and must in all such cases be rejected, is to put an end to all expert testimony at a single stroke.

III. Complaint is made of the feature of the instructions permitting plaintiff to recover, in addition to the rentals for the first four months after delivery under the contract, like rentals for such time, if any, as they (the engines) were retained by defendant in pursuance of said contract in addition to said four months.

No objection to the instruction is made except it is urged it ignores defendant's contention that the original contract was superseded by a new one made at St. Louis in June, 1908, upon which recovery could not be had under the pleadings.

Under the contract defendant agreed to take the engines for four months and was given "the privilege of retaining the engines for a longer period on the same basis." He also agreed to pay the contract rate from the time of delivery, less four free days, until the engines were returned to plaintiff at Atlanta. Under the instruction complained of rentals for any time in excess of four months were to be allowed plaintiff by the jury only in case they found defendant retained the engines "*in pursuance to said contract.*"

At defendant's request the court unequivocally instructed the jury that if they found a new contract was made in St. Louis plaintiff could not recover "for any use made of said engines by the defendant after

257 Mo. 17

the expiration of said four months term,'' and also instructed that if after the four months period defendant "did not exercise the privilege of retaining the engines for a longer period on the same basis, then plaintiff will not be entitled to recover any rental for the use of said engines after the expiration of the four months named in the contract.''

Defendant does not, in the last analysis of his argument, contend the instruction did not fairly submit the question, if such a question was made in the case, but is driven to the point of insisting the evidence is conclusive a new contract was made at St. Louis in June and that the minds of the parties "did not meet upon an extension of the original contract.''

Defendant and Judge Eaton testified to facts tending to show that a new contract was made in St. Louis. Their conversation there was with Mr. Kern, plaintiff's president, and his testimony directly contradicts them as to the substance of the conversation they had with him.

Kern was insisting upon the payment of the sums overdue and, according to his version of the conversation at St. Louis, contended the engines were in proper condition when delivered to defendant. He testified defendant asked him to send a man down to go over the engines and that he agreed to do this. He testified, also, that in concluding the conversation he said to Judge Eaton, in defendant's presence: "Judge, Mr. Smith wants me to send a man down there and look it over. I suppose if the engines are put in service he will have to pay rent from the time the engines were shipped, won't he?'' and that Judge Eaton replied, "Yes, he would be liable for the rent from the time the engines were shipped.''

This testimony, coupled with the fact that defendant did actually retain and use the engines after the expiration of the four months, warranted the submission to the jury of the question whether defendant

was liable, at the contract rate, for the use of the engines after the four months period.

IV.   Another insistence is that plaintiff ''was not entitled to recover rent on the engines while they were being repaired pursuant to the St. Louis agreement.''

The argument on this assignment is based upon the assumption that the evidence *conclusively* shows a new agreement was made at St. Louis.  This assumption is not warranted by the record as was pointed out in the preceding paragraph.  If, as there is evidence tending to show, the condition of the engines when delivered to defendant complied with the contract and they became out of repair through the fault of defendant or his employees, defendant was liable for rent at the contract rate during any time they were undergoing repairs thus necessitated by neglect or mismanagement for which he was responsible.  It makes no difference that some of the repairs were made by one of plaintiff's employees.  That fact was worth something upon the question whether the testimony of Kern or that of Eaton and Smith concerning the St. Louis conference would be believed by the jury, but after the jury decided, as they did, to believe Kern, then the fact that Bird, plaintiff's employee, went to Louisiana and aided defendant in making repairs the jury must have found were necessitated by the fault of defendant and his employees, does not foreclose plaintiff's right to recover rent for the time during which such repairs were being made.  On the evidence the jury was warranted in finding that Bird did not represent plaintiff in the sense that while he was working on the engines they were constructively in plaintiff's possession, but that he was sent for defendant's convenience and at his request to oversee the repairing done.

By what is said herein it is not intended to indicate any opinion as to whether the jury were right or

wrong in believing Kern's testimony. That is not the province of this court. They chose to believe it, however, and it constitutes evidence sufficiently substantial to support their finding that no new contract was made at St. Louis.

V. The deposition of one Shannon, taken by defendant, was offered. In his direct examination he had been asked by defendant's counsel to state "from his examination and inspection of the engines, whether in his judgment the engines had been overhauled." Plaintiff's counsel asked this witness on cross-examination to "state what the overhauling of an engine consists of," and he answered that "overhauling an engine consists of relining the shoes and wedges, facing the valves, boring out cylinders, refitting all bolts in the frame, replacing new stay bolts, new flues, new driving brasses, if necessary, turning the tires, lining the guides, babbitting crosshead gib, overhauling the brake rigging, closing all the holes and taking up all lateral motion, putting hub plates on wheels, closing up eccentric straps and links, and reboring and fitting of all pins connecting with the links and eccentric blades, rocker boxes and valve stems."

On the trial defendant's counsel withdrew the question calling for the judgment of the witness whether the engines had been overhauled, on the ground that it was incompetent because it called for the conclusion of the witness.

The court then permitted plaintiff's counsel to withdraw the question and answer on cross-examination as to what constituted the process of overhauling. The matter was argued extensively in the trial court.

The subject was one upon which expert testimony was competent, and the exclusion of the question on direct examination calling for the judgment of the witness can only be justified on the ground that he

had not qualified as an expert, and that was the fact. He was a locomotive engineer but was not shown to have any experience or knowledge of the construction, repairing or overhauling of engines. He had, it is true, served as master mechanic for defendant, but he held out in that position only thirteen days. The trial court did not abuse its discretion in such matters in arriving at the conclusion that he was not qualified to speak as an expert on the matter being investigated, and it will be presumed it did so hold in permitting the withdrawal of the question propounded to him in chief, that holding being necessary to justify the ruling and the record not showing the contrary.

The question relating to the same matter on cross-examination was therefore properly excluded since it was elicited during the taking of the deposition in an effort to test the knowledge of the witness of the subject to which the question in chief related, which question and answer are now conceded to be improper and incompetent.

It was said, with respect to a like question, in Fleming v. Hollenback, 7 Barb. (N. Y.) l. c. 273: "It would seem to follow, as a matter of course, that if the direct interrogatory and answer were properly excluded, the fourth and fifth cross-interrogatories, which upon their face appear to be dependent upon it, were also properly excluded; otherwise the provision of the statute reserving the right to object to the competency of the interrogatory and answer, upon the trial, would be of very little avail to the party, inasmuch as he must forego his right to cross-examine the witness, or in effect be deprived of his objection to the direct interrogatory and answer."

The same principle was applied in Old v. Powell, 7 Ala. l. c. 657.

In any event, it is difficult to understand how the exclusion of the answer mentioned could have injured defendant. The purpose of overhauling the engines

was to put them in first class operative condition, and, to the issue whether they were so, nearly all the evidence on both sides related. Their actual condition, as he saw it, was detailed at great length by the witness Shannon and many other witnesses, and there is no rational probability that the palpably meager answer excluded could have aided defendant materially even if admitted.

The decisions cited by defendant's counsel lay down the usual rule that depositions properly taken and on file are the common property of the litigants and may be used by either if otherwise competent. There is nothing in them militating against the conclusion reached.

VI. On the second count of the petition, under which there was a verdict for $749.70, the court instructed that if the jury believed, "from the evidence, that the defendant was in possession of, controlled and operating certain locomotives in question, and that plaintiff, at the request of defendant, made on or about the 9th day of June, 1908," paid designated sums and expenses "for repairs to said locomotives" and "for looking after the repairs of said locomotives, and that said payments were made and said expenses incurred at the request of defendant, they will find for defendant on the second count of the petition for such sums," etc.

In this same connection, at defendant's request, the court instructed, in substance, that if the jury found that about the expiration of the four months period mentioned in the contract, plaintiff agreed to take the engines and have them repaired and defendant agreed to thereafter take and use them, then plaintiff could not recover for repairs it made under that arrangement, at Alexandria or elsewhere. This instruction, it is insisted, is correct, but is said to conflict with that given for plaintiff.

The engines were shipped from Atlanta February 5, 1908, and, consequently, the expiration of the four months period mentioned in defendant's instruction, was identical with the date, June 9, 1908, mentioned in plaintiff's instruction, allowance being made for the four free days under the contract.

It is true the jury, under proper instructions, found, on the first count, that the engines were, at the time they were delivered to defendant, in the condition called for by the contract, and also found that there was no agreement at St. Louis which substituted a new contract for the old; but it is also true that the period of four months during which the contract obligated defendant to keep the engines expired on June 9, 1908, and that when the parties met in St. Louis the time for defendant to exercise his option to retain the engines for a further period was at hand.

There is evidence from which it might be reasonably inferred that plaintiff undertook to have the engines repaired in order to induce defendant to exercise his option to retain them. In fact, plaintiff's president, Mr. Kern, testified that one of his purposes in conferring with defendant at St. Louis was to induce defendant to take the engines and use them. It might also be reasonably inferred from Mr. Kern's testimony that he never intended defendant should be charged with the expense of repairing the engines, since he testified that at St. Louis defendant wanted him to send a man down to look them over, and he sent the man; that he "thought he would help him [defendant] out that much."

If plaintiff made the repairs in order to induce defendant to exercise his option and retain the engines or did so simply "to please a customer" and to "help him out," not intending a charge therefor, plaintiff cannot recover on the second count.

The instruction given for plaintiff on that count ignores both theories and is consequently erroneous.

VII. The answer contains a counterclaim which seeks damages from plaintiff (1) because the engines "at the time of delivery . . . to defendant" and thereafter were in defective condition and defendant was put to expense in caring for them and in endeavoring to put them in operative condition; and (2) because by reason of the defective condition of the engines, defendant lost the value of their use, his employees were enforcedly idle and he was put to extra expense in securing other engines for his work.

On the first branch of this contention the court instructed exactly as defendant's counsel requested except that, in instructions previously discussed, it added the words "when delivered to defendant," thus conditioning the right to recover upon defective condition at the time of delivery. This accords with the language of the counterclaim and with principles already discussed, and the contention is ruled against defendant.

On the second branch or count of his counterclaim defendant's counsel asked three instructions conditioning the right to recover thereunder upon a finding that the engines were not in first class operative condition and so remained for the four months mentioned in the contract. Complaint is made of the refusal of these instructions.

This contention is disposed of by the fact that these instructions authorized the jury to find for defendant on this branch of the counterclaim even though they might find that the engines were, when delivered to defendant, in the condition called for by the contract. They were, for that reason, clearly erroneous.

Further, on the first count of the petition, and on the first count or branch of the counterclaim, the jury found against defendant upon the vital question upon which his right to recover on the second count of his counterclaim depended. He could not recover under the counterclaim unless he convinced the jury that the

engines were not in the condition called for by the contract when they were delivered to him. The jury, under correct instructions, twice decided this issue against defendant.

A finding that the engines were, when delivered to defendant, in the condition called for by the contract was absolutely necessary to a verdict for plaintiff on the first count of the petition. That finding the jury made. The exactly contrary finding would have been necessary to a verdict for defendant on his counterclaim. A verdict for plaintiff on the first count of his petition and for defendant on his counterclaim would have been a logical and legal absurdity. Had the jury found against plaintiff, then a refusal by the trial court to have submitted the issues on the second count of the counterclaim would have presented a different question. The failure to give the instructions asked had nothing to do with inducing the verdict for plaintiff on the first count of the petition and that verdict necessarily includes and is based upon a finding which absolutely negatives defendant's right to recover on his counterclaim. In view of these facts, defendant could not have been injured by the refusal of these instructions, even could it be conceded they were in correct form. [McColman v. Railroad, 150 N. C. l. c. 709; Barlow v. Foster, 149 Wis. l. c. 624, 625.]

The judgment should be affirmed as to the first count and reversed and remanded as to the second count.